## Sparrow et al. *versus* Kohn et al.

1. The New York statute of 1833 (P. L., chap. 281) forbidding the transaction of business in the name of a partner not interested in the firm, under the penalty of a fine not exceeding $1,000, being highly penal in its nature, will be strictly construed by the courts of Pennsylvania, and not extended beyond its plain and obvious meaning, so as to include a transaction which is not an ordinary incident of the business in which the firm is engaged.

2. A Philadelphia firm, engaged in the millinery business, and having a branch house in New York, made a parol lease of a part of its New York building, then unoccupied. At the time this lease was made the firm was doing business under the name of "Kohn, Adler & Co.," al-

though Adler was dead, and there was no one of that name then in the firm. In an action by the lessors for arrears of rent, the lessees sought to avoid the lease on the ground that the lessors acted in violation of the New York Act of 1833.

*Held*, that the lease was valid, and that the making of it was not " transacting business " within the meaning of the Act. The lessors were not real estate agents or brokers, and the leasing of part of their building was not an ordinary incident of their business.

March 23d, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Common Pleas No. 3, of *Philadelphia county:* Of January Term 1884, No. 278.

Assumpsit, by Isaac Kohn, Benj. W. Fleisher, Simon I. Kohn and Samuel Kohn, trading as Kohn, Adler & Co., against Sparrow, Venino & Co., to recover arrears of rent on a verbal lease.

On the trial, before LUDLOW, P. J., the following facts appeared: The plaintiffs were a Philadelphia firm, engaged in the millinery business, having a branch office in New York. On May, 1882, they rented a vacant part of their building in New York to the defendants, by a verbal lease, for nine months, at $100 per month. The defendants occupied the premises for four months, when they vacated the same, and this suit was afterwards brought to recover rent for the remaining five months. At the time the lease was made Adler was dead, and there was no person of that name in the plaintiff firm, although they continued to do business under the old firm name.

The defendants set up that the contract, having been made in New York, was subject to the laws of that state, and was void under the following statute: N. Y. P. L. for 1833, chap. 281:

An Act to prevent persons from transacting business under fictitious names.

Sec. 1. No person shall hereafter transact business in the name of a partner not interested in the firm; and where the designation "and company" or "and Co." is used, it shall represent an actual partner or partners.

Sec. 2. Any person offending against the provisions of this Act shall, upon conviction thereof, be deemed guilty of a misdemeanor, and be punished by a fine not exceeding one thousand dollars.

It was admitted that the verbal lease sued upon was to be interpreted according to the laws of the State of New York.

The court refused to enter a nonsuit at the motion of the defendants, and instructed the jury to find a verdict for the plaintiffs. Judgment was entered on this verdict, and a motion for a new trial overruled by the court, whereupon the

defendants took this writ, assigning for error the instruction of the court directing the jury to find for the plaintiffs.

*A. Sydney Biddle* (with whom were *J. Rodman Paul* and *Geo. W. Morris*), for plaintiffs in error.—By its terms, the New York statute fully covers the present case, and it has been held that the phrase therein forbidding "the transaction of business" applies to the making of contracts by the fictitious and illegal name: Swords *v.* Owen, 43 How. Pr., 176. Even the continuation of a firm's name by the executors and survivors of a deceased partner, who had instructed them by his will to carry on the business, was held a violation of the statute: Lane *v.* Arnold, 13 Abb., N. C., 75. The case of Wood *v.* Erie R. R. Co., 72 N. Y., 196, is clearly distinguishable from the present case. There the plaintiff, who was doing business in the firm name of "Wood Bros.," contrary to the provisions of the Act of 1833, shipped his individual property, a carriage, by the defendant's road, and it was badly injured through the negligence of the company. Wood brought suit in his individual name against the company, and it was held that he could recover, because he *brought suit for a tort committed against property consigned to him.* The case decides that although all transactions of a firm doing business under a fictitious name, contrary to the Act of 1833, are void, yet an individual transaction by a member of such firm is not avoided.

Moreover, in New York as in Pennsylvania, it has always been held that no action for breach of contract can be maintained upon a transaction either explicitly forbidden by law, or to the doing of which a penalty is affixed: Hallett *v.* Novion, 14 Johns., 273: Griffith *v.* Wells, 3 Denio, 226; Pennington *v.* Townsend, 7 Wend., 280.

*David Tim* (with whom was *Thomas J. Diehl*), for defendants in error.—The New York Act of 1833 is entirely penal in its character, and must be strictly construed. It reads: "No person shall hereafter transact business . . . . ."

The contract in this case is based upon a letting of a part of real estate occupied by the appellees, who were never engaged in the real estate business, or any branch thereof, but were and are a Philadelphia firm engaged there in the millinery business, and the letting of the premises in question was entirely extraneous to the business they carried on. It certainly cannot be said that if the owner or lessor of a house rents part of that house, which is vacant, that he is engaged in the real estate business. The statute was not intended to regulate every little transaction made by an individual or indi-

viduals, but only such contracts appertaining to the business he or they follow.

It was enacted to prevent frauds being practised upon third persons dealing with an individual or a firm, and this statute has been fully construed by the Court of Appeals of the State of New York in the case of Wood *v.* Erie R. R. Co., 72 New York R., p. 196. Though this case is one in tort, yet the court, in its elaborate opinion, have construed the statute generally, as applicable to any and all cases. It is evident that no fraud has been practised on the plaintiff in error, neither have, or could they in anywise be damaged by a contract, of the nature of, and executed in the manner and form, as the one in question.

Mr. Justice PAXSON delivered the opinion of the court, October 12th, 1885.

This action was brought to recover certain arrears of rent. The demised premises are situated in the city of New York and the contract was made there. The defendant below resisted payment upon the ground that the verbal lease under which he held the premises was void under the statute of the state of New York which prohibits any one from transacting business in the name of a partner not interested in the firm.

The plaintiffs below are a Philadelphia firm with a branch office in New York. The name of their firm is Kohn, Adler & Co., and at the time of this transaction Mr. Adler was dead, and there was no person of that name in the firm. In 1882 they rented a vacant portion of their building in New York to the defendants. Was this transacting business within the meaning of the New York statute? The learned judge of the court below held that it was not, and we see no reason to question the soundness of his ruling.

In construing a New York statute we naturally turn to the decisions of the courts of that state for light. We do not find a ruling upon the very point. The nearest approach to it is the case of Wood *v.* Erie R. R. Co., 72 N. Y., 196. It was there said by the court of errors and appeals in considering this statute: "The Act is highly penal, and will not be extended by implication or construction to cases within the mischief, if they are not at the same time within the terms of the Act fairly interpreted. We must also consider the purpose of an Act of this character in construing the same, and the mischief it was designed to suppress. It is quite obvious that the object in view was to prevent an individual engaged in business from continuing to use the name of a member of the firm with whom such persons had been associated, after such member had retired from the concern, or of using the name of

[Culp *v.* Commonwealth.]

a person not interested in such firm, and thus to induce credit to be given by those trading with such persons, and to impose on the public. Such being the manifest object of the law, it evidently related mainly to dealings between the individual who used the name of the old firm, or of one not interested, and the person who transacted business arising out of said dealings with him. These would be mainly between the vendor and the vendee, or the employer and the employee, or the person who performed labor or rendered services, and the one for whom it was rendered. Business transactions between parties occupying such a relationship would clearly come within the operation of the statute referred to, and were intended to be embraced within its provisions. It was against fraud and imposition which might be practised upon innocent parties who dealt with the persons who transacted business in the name of a party whose interest had ceased, or who never had any interest in the same, that the statute was directed. These were the evils intended to be remedied and clearly within the terms of the statute. Beyond this the statute cannot be extended by implication, or even by a liberal construction."

The case in which the foregoing language was used by Justice MILLER was in tort, and therefore essentially different in its facts from the one in hand. It is valuable however as being a well considered construction of the statute.

We are of opinion that in leasing this property the plaintiffs were not transacting business within the meaning of the New York statute. They were not real estate agents or brokers in any sense. They were in the millinery and straw goods business. The leasing of a part of their premises was not an ordinary incident of their business; it was done merely because it happened to be vacant. The Act was never intended to cover such a case as this, and as it is highly penal we will not extend it beyond its plain object and meaning.

Judgment affirmed.