ABBIE I. HENRY and THE SOUTH BEND CHILLED PLOW COMPANY, OF INDIANA, as creditors of THE MUSCONETCONG GRANGE, No. 114, as a voluntary association,

*v.*

WILLIAM M. SIMANTON et al.

[Filed February 10th, 1903.]

1. Construction of the provisions of "An act for winding up voluntary associations and associations with partnership liabilities" (*P. L. of 1899 p. 485*), respecting the constitutionality of the act, who can file a bill or petition thereunder, and the questions to be decided when an answer is filed by a listed member of the association.

2. A grange was organized for the primary purpose of establishing a store where general merchandise should be sold and exchanged for the benefit of its members. The business was conducted by a superintendent, under his name. The executive functions of the grange were in the hands of three trustees. Several notes signed by the trustees had been given in the course of its business, interest being paid out of the funds of the association. The association became insolvent, and creditors holding notes filed a bill.—*Held*, that the court had jurisdiction to appoint a receiver and grant an injunction.

3. The grange became incorporated under the act of 1876 (*Gen. Stat. p. 1644*), for the incorporation of granges, but there was no effort to become incorporated under any other statute.—*Held*, that it did not become a corporation *de facto* for the purpose of transacting mercantile business.

*Mr. Martin Wyckoff,* for the complainants.

*Mr. Irwin W. Schultz* and *Sylvester C. Smith,* for the defendants.

REED, V. C.

This bill is filed by two creditors, for themselves and such others as may come in. The relief is sought under the provisions of an act passed in 1899 (*P. L. of 1899 p. 485*) entitled "An act for winding up voluntary associations and associations

with partnership liabilities." The act provides that whenever a voluntary association, carrying on business with partnership liabilities, shall become insolvent, or shall suspend its ordinary business for want of funds to carry on the same, it shall be lawful for any creditor or member of such association to apply to the chancellor for a writ of injunction and the appointment of a receiver for the winding up of the business and the payment of the debts of such association. It empowers the chancellor to proceed in the manner provided for winding up insolvent corporations under the Corporation act of 1875. It makes it the duty of the trustees or managers of such association, who are served with subpœna, to file with the clerk of this court a verified statement of the names of all the members of the association. After the filing of this list, an order is to be made requiring all such members to show cause why an injunction should not be allowed and a receiver appointed should not be granted according to the prayer of the bill. Any member, upon the return of such notice, may file his or her answer and proceed to a hearing. The remaining parts of the statute deal with the procedure after the receiver is appointed.

In the present case the trustees filed a list of members, and, upon the return of the order to show cause, fifty-five members out of one hundred and six filed answers, and against the remaining fifty-one who failed to file answers decrees *pro confesso* have been taken.

In addition to the answers, a demurrer was interposed to the bill. The first ground taken by the demurrant is that the act of 1899 provides that the chancellor, in this proceeding, may proceed in the manner provided for the winding up of insolvent corporations under the "Act concerning corporations," approved April 7th, 1875. It is insisted that there is no act concerning corporations now in existence approved April 7th, 1875, because it was repealed by the act of 1896. *P. L. of 1896 p. 277.*

The act of 1875 is repealed by the act of 1896 only so far as the provisions of the act of 1875 are not expressly re-enacted in the act of 1896. *P. L. of 1896 p. 317 § 118.* The repealer, therefore, operated only upon those provisions in the act of 1875 which are inconsistent with the provisions of the act of 1896. The

methods of procedure, in winding up insolvent corporations, contained in the act of 1875 are substantially re-enacted in the revision of 1896. The effect of the revision was to continue them in force. *Sund. Stat.* § *161.* The act of 1875 was usable as a standard of procedure, and became a legal rule, apart from its own virtue, by reason of the vitality imparted to it by the legislative reference to it in the later act.

I am of the opinion, therefore, that this ground of objection to the bill is not tenable.

The second ground of attack is that the bill, while setting out that the association filed a certificate of incorporation at a certain date, does not state whether the debts due to the two complainants arose out of the dealings with the association before or after its incorporation.

The point of this objection is that, unless the debts of the complainants accrued before the date of filing the certificate of incorporation, they are not debts of a voluntary association; and that it was the pleaders' duty to state as a fact that the debts were incurred while the grange was still unincorporated.

But the theory of the bill is that the certificate of incorporation did not protect the members of the grange from liability for debts incurred in the business conducted by the grange, even after its incorporation. The bill asserts that no notice of the intention to incorporate was given at a previous regular meeting of the grange, and further, that these debts were not contracted in the transaction of the corporate business of the grange. If these facts are so, as I must assume them to be, then any debts incurred by the grange, at any time, confers upon the creditor a footing to file a bill.

The third ground taken is that one of the complainants, the South Bend Chilled Plow Company, is shown to be disentitled to stand as a creditor, because the bill describes it as a foreign corporation, without showing that it has become equipped to do business in this state. Admitting this to be true, this complainant is not the only complainant; there remains another creditor who was entitled to file the bill. But, indeed, it does not appear from the bill that the South Bend Chilled Plow Company is disentitled to stand as a creditor. It does not appear from the bill

that the contract out of which the debt arose was made in the State of New Jersey; and if it did so appear, a single transaction would not amount to doing business in this state.

For these reasons I think the general demurrer challenging the equity of the bill must be overruled.

Upon the hearing upon the bill and answers filed the following facts appeared:

The Musconetcong Grange was organized in February, 1893. Its primary purpose was to establish a store where general merchandise, such as is usually carried by a country store, should be sold and exchanged for the benefit of the members of the grange. Persons other than members were permitted to deal at the store, but the members were favored in the transaction of the business. The scope of the business was extended, from time to time, and included the sale of grass seeds, harvest implements, fertilizers, sheep, &c. The grange also operated a mill and conducted a butcher business. The business was conducted by a superintendent, named Wesley Fleming, under the firm name of Wesley Fleming & Company, adopted at a meeting of the members of the grange held March 30th, 1893. The executive functions of the grange were in the hands of three trustees. On January 11th, 1894, the association elected three trustees and filed a certificate of incorporation, under color of the provisions of an act approved April 21st, 1876, to enable grangers of the Order of Patrons of Industry to incorporate. *Gen. Stat. p. 1644.*

The history of the business of the association, before incorporation, seems to have been this: The store had been in operation before Fleming came to take charge of it. He began the management of the business, under a salary, on April 16th, 1893. A note had already been given to one William M. Simanton for $1,500. Simanton was one of the trustees of the grange trading as Wesley Fleming & Company, and the note was signed by Royal Milroy, Charles I. Carpenter and Isaac Woolverton, who were, in fact, trustees of the association. Interest was paid on this note out of the funds of the association after Fleming took charge.

On May 25th, 1893, another note was made to Daniel Williamson & Son for $500, signed by the same makers, as trustees, in the same form as the former note. Upon this note interest was paid in the same manner as upon the former note.

The note to Abbie I. Henry, one of the complainants, was not made until after the certificate of incorporation was filed. It was dated March 31st, 1894, and signed by William M. Simanton, Isaac Woolverton and Absalom Apgar, trustees.

Another note, to William D. Hill for $200, dated April 1st, 1894, was also executed by the trustees.

Still another note was executed March 31st, 1894, for $200, to Isaac Woolverton, and signed by the same trustees and sealed with the corporate seal.

The note to the South Bend Chilled Plow Company, the other complainant, was made on May 1st, 1897, and was signed in the name of the Asbury Mercantile Company by the treasurer of the company. These are the facts disclosed.

To the settlement of what questions are these facts to be presently applied? What are the points to be settled at this stage of the proceedings?

The act, as I have already observed, provides for a subpœna, after filing a bill or petition. This subpœna is to be directed to the trustees or managers of the association, who are to file a list of members of the association. Then these members are to be brought into court by orders to show cause why the prayer of the petition or bill should not be granted. The appropriate prayer of the bill is for the appointment of a receiver and an injunction. The facts conferring jurisdiction upon the court to grant such prayer are therefore the following:

*First.* The existence of a voluntary association carrying on business with partnership liabilities.

*Second.* The fact that such association has become insolvent, or has suspended its business for want of money to carry on the same; and

*Third.* The fact that a creditor or member of such association is the complainant who files the bill or petition.

It therefore seems to be clear that one who has been returned by the trustees as a member can contest only the existence of these facts by his answer; at least, it is manifest that the existence of these facts are alone triable at this stage of the procedure. The defendant cannot try the question whether he ever was a member, or was such at the time a debt or debts were incurred.

It is, of course, true that each person returned as a member has the right to his day in court, to test his or her personal liability to any creditor of the grange. But, by the scheme provided by the statute, it seems that this must be done by exceptions filed to the report to be made by the receiver of the claims against the association. And as to his liability for any valid debt, the contest must occur when the assessments against each member, in proportion to the debts and expenses, shall be made.

In respect to the three matters to which the present inquiry is confined, I am of the opinion, disregarding, for the moment, the effect of the certificate of incorporation, that it has been proved that there existed a voluntary association, having some members, who, either by direct action or by express or implied assent, did business, in which the borrowing of money was a part, for the common purposes of such members; that there arose, as to such members, a partnership liability for such debts; that this association did business under the name of Wesley Fleming & Company, and afterwards under the name of the Asbury Mercantile Company, and that, in 1897, it became insolvent, and also ceased to do business for want of funds to carry it on. It also appears that Abbie I. Henry and the South Bend Chilled Plow Company are creditors of these associated members.

The remaining question is whether the certificate of incorporation of the grange relieves the individual members from liability and imposes it alone upon the corporation. The debts of the complainants were incurred after the certificate of incorporation was filed. I will assume that the certificate of incorporation was regular, although the point is raised that no notice was given or entered in the minutes of the grange of an intention to incorporate, and I will assume that the incorporation was one which cannot be attacked by a creditor, who did business with it, because of irregularities of organization. *Stout* v. *Zulick, 19 Vr. 599.*

In my judgment the business conducted by the members of the organization was so entirely aside from the power conferred upon the grange by the statute under which the incorporation was affected that the business must be regarded as partnership, and not corporate.

37

It is perceived that the act under which the incorporation was effected declares that the trustees of the grange shall be a body corporate, with only the ordinary powers incidental to all corporations. The enumerated powers are to have a common seal, to sue and be sued, and to acquire, hold, improve and lease or sell land, and to have a capital stock, and to make by-laws. There is no power granted to transact any mercantile business whatsoever. The corporation is a mere club or society, with power to acquire property for club or society purposes. It has no more power to transact a business, as a corporation, than has an incorporated religious society. The entire business transacted was *dehors* the grant contained in the act. Mr. Cook remarks:

"Where the business for which incorporation is sought is not within the class of business mentioned in the act itself, the attempted incorporation is void, and the participants are liable as co-partners." *1 Cook Stock. 316* § *236.*

Nor was this grange transacting business as a *de facto* corporation, for while there are statutes under which it might have become incorporated for such purposes, there was no effort made, *bona fide* or otherwise, to become incorporated under such a statute.

I shall advise a decree appointing a receiver and granting an injunction.