SIGEL-CAMPION LIVE-STOCK COMMISSION COMPANY v. JAMES HASTON et al.

No. 13,547. (75 Pac. 1028.)

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE— *Sufficient Consideration Between Husband and Wife.* If a wife place in circulation her note, secured by a mortgage on her land, for the purpose of procuring the satisfaction of her husband's debt, which object is attained, the advantage he derives from the transaction is a consideration to her.

2. _____ *Satisfaction of Debt by Transfer of Note and Mortgage no Diversion of Funds.* If, in such a case, the note and mortgage are given for the purpose of procuring funds to be paid by the mortgagee to the creditor in satisfaction of the debt, it will not constitute a diversion of the securities from their original purpose if the creditor takes them by indorsement and assignment from the mortgagee in lieu of the funds themselves.

3. CORPORATIONS— *Foreign Corporations May Sue.* Isolated, independent transactions in this state, incidentally necessary to the business of a foreign corporation conducted at its domicile, fully completed before action commenced, will not prevent recovery in the courts of this state by such corporation under section 1283, General Statutes of 1901, when no repetition of such acts is in contemplation and the territory of the state is not being made the basis of operations for the conduct of any part of the corporation's business at the time the suit is begun.

Error from Reno district court; M. P. SIMPSON, judge. Opinion filed March 12, 1904. Affirmed in part; reversed in part.

*Prigg & Williams,* for plaintiff in error.

*George A. Vandeveer,* and *F. L. Martin,* for defendants in error.

The opinion of the court was delivered by

BURCH, J.: On February 20, 1901, the Sigel-Campion Live-stock Commission Company, a corporation of the state of Colorado, commenced an action to foreclose a mortgage given by James Haston and Mary

J. Haston, his wife, to the Schirmer Insurance and Investment Company, and assigned to the plaintiff. Various parties were made defendants. Mary J. Haston answered, claiming part of the land as her own; that the mortgage and the note it secured were accommodation papers; that she was a surety of her husband; that she received no consideration for executing the paper; that no consideration passed for the assignment of the paper by the payee to the plaintiff; that the mortgage was void under the bankruptcy law; that a conveyance of a part of the land by her to J. M. English, one of the defendants, was void; and that the plaintiff had no right to recover, on account of failure to comply with the corporation laws of this state. Howard S. Lewis answered as trustee in bankruptcy of James Haston, claiming the note and mortgage to be void under the bankruptcy law, charging the English transfer to be void, and impeaching the right of plaintiff to recover, as a foreign corporation which had not complied with the law regulating its right to do business in this state.

James Haston adopted the answers of his wife and Lewis, trustee, and pleaded his discharge in bankruptcy. Elmore-Cooper Live-stock Commission Company and Sattley Manufacturing Company, judgment creditors, set up liens upon the land. English made default. At the conclusion of the trial, findings of fact were made, and upon them judgment was rendered for the plaintiff, foreclosing the mortgage against the land of James Haston, but releasing the land of Mary J. Haston from its lien. After the satisfaction of the plaintiff's lien, the balance of the proceeds of the sale of James Haston's land, if any, was to be paid to Lewis, trustee. The deed to English was set aside, and judgment creditors were given first

liens upon Mary J. Haston's land. The plaintiff asks for a reversal of so much of the judgment as denies it a first lien upon Mary J. Haston's land, and the trustee in bankruptcy asks for a reversal of so much of the judgment as enforces the mortgage against James Haston's land.

The right of the plaintiff to recover against Mary J. Haston is clear, unless she can impeach the acquisition of title to the note and mortgage by the plaintiff. Under the well-understood rule, only the findings of fact and uncontroverted allegations in the pleadings can be considered. (*Shuler v. Lashorn*, 67 Kan. 694, 74 Pac. 264.)

In April, 1900, James Haston agreed with the plaintiff and the Schirmer Insurance and Investment Company to execute a mortgage upon his own and his wife's land to the Schirmer Insurance and Investment Company for a loan of $10,000, out of the proceeds of which the plaintiff was to receive certain sums of money then due it from James Haston, and be repaid other moneys which it agreed to advance to James Haston to pay for feeding cattle. Afterward it was agreed between James Haston and the plaintiff that the amount of the advancements should be increased in order to pay judgment and other liens against the land, and to purchase other real estate to be included in the mortgage, and the amount of the mortgage was increased to $15,000 for these purposes.

At the date of these negotiations James Haston was indebted to the plaintiff in a considerable sum. Before the execution and delivery of the note and mortgage, which were delayed for some months, the plaintiff paid out, according to agreement and for the items specified, sums of money sufficient to make up the full amount of $15,000. After their execution the

note was indorsed and the mortgage was assigned by the payee to the plaintiff. The payee paid nothing to the Hastons for the paper, and the plaintiff paid the payee nothing for it. This fact the court expressed in the form of a legal conclusion relating to consideration, which would be incorrect as a matter of law. Taken as a statement of fact, however, it is clear and correct. Mary J. Haston was not originally a party to James Haston's agreement to give the mortgage, nor to the subsequent modification of that agreement, increasing the amount to be advanced and to be secured; but the court expressly found that she was surety for her husband.

From this state of facts it is plain that the plaintiff's advancement of money to James Haston was for a temporary purpose only, and that it was to be repaid as soon as the mortgage loan could be arranged. After the advancements had been made he was indebted to the plaintiff on account in the sum of $15,-000 for money had and received. In order to enable her husband to satisfy his obligation to repay the plaintiff this money, and for her husband's benefit and accommodation in that regard, Mrs. Haston placed in circulation her note, secured by a mortgage on her land. This she had a right to do, and the benefit he derived from the transaction was a sufficient consideration to her. (7 Cyc. 723.)

By means of this note and mortgage James Haston's debt to the plaintiff was paid. His immediate liability for the repayment of the money he had received was as effectually satisfied and discharged as if the Schirmer Insurance and Investment Company had paid the plaintiff in cash. It was not in contemplation of the parties that the Schirmer Insurance and Investment Company should pay any money

whatever to James or to Mary J. Haston. It was simply to satisfy James Haston's debt to the plaintiff. How this debt was paid, if in fact it was paid, was of no concern to Mary J. Haston. If, in lieu of cash, the plaintiff was willing to accept the securities themselves, she had no right to complain. No restrictions upon the use of the paper, as a means of securing the payment of her husband's debt, appear. The indorsement of the note and assignment of the mortgage by the payee and mortgagee accomplished that purpose. The change in the plaintiff's situation made it a holder for value. Its knowledge of the suretyship relation between Mary J. Haston and her husband could not affect the plaintiff's right to recover. (7 Cyc. 725, 947.) The transaction was free from fraud, and she is legally bound.

The findings of fact relating to the validity of the mortgage sued on under the bankruptcy law fail to show that its execution and enforcement would have the effect of enabling the plaintiff to obtain a greater percentage of his debt than any other creditor of the same class. In this respect the case is analogous to *Baden v. Bertenshaw*, ante, page 32, 74 Pac. 639, and *Dry-goods Co. v. Bertenshaw*, ante, page 734, 75 Pac. 1027 ; and the relief prayed for in the cross-petition in error of Lewis, trustee, on account of a supposed preference given the plaintiff, must be denied for want of sufficient facts to support it.

Regarding the right of the plaintiff to bring suit, the court found as follows :

"That prior to August 1, 1899, the defendant, James Haston, and the plaintiff were engaged in the cattle business as partners in the state of Kansas ; that their mode of business was for the defendant, James Haston, to execute mortgages to the plaintiff for the

48—68 KAN.

purchase-price of all cattle that were turned in, and that they were engaged in business as partners up to that time.

"That since August 1, 1899, the plaintiff has not been in partnership with the defendant, James Haston, but that, on different occasions since said date, plaintiff has prepared notes and chattel mortgages and renewals thereof and sent the same to James Haston, who signed the same in the state of Kansas, and, at the request of plaintiff, had the same filed of record in different counties in Kansas where the defendant lives and where the cattle were located, but that the notes secured by said mortgages were payable to the plaintiff at its offices in Denver, Colo."

In *Thomas v. Remington Paper Co.*, 67 Kan. 599, 73 Pac. 909, it was said:

"In order to invoke the application against a foreign corporation of the provision of section 1283, General Statutes of 1901, forbidding the bringing of an action by a corporation without first filing certain statements, it must be shown that the corporation in question is one doing business in this state."

The findings quoted show nothing more since 1899 than fully completed, isolated, independent transactions, only incidentally necessary to the business of the corporation conducted at its domicile. They do not show that repetitions of the acts described were in progress or in contemplation at the time suit was brought, or that the territory of the state was then being made the basis of any kind of operations for the conduct of any part of the corporation's business. Therefore, no bar to plaintiff's recovery appears.

The judgment in favor of the plaintiff and against Lewis, trustee, is affirmed. The judgment awarding to Elmore-Cooper Live-stock Commission Company and Sattley Manufacturing Company first liens upon the land of Mary J. Haston is reversed. The judg-

ment denying the plaintiff a first lien upon the land of Mary J. Haston is reversed, and the cause is remanded, with direction to the district court to enter judgment foreclosing the plaintiff's mortgage as a first lien upon Mary J. Haston's land, and otherwise to proceed in accordance with this opinion.

All the Justices concurring.