KEFFLER, RESPONDENT, *v.* WILDS, APPELLANT.

(No. 3,481.)

(Submitted February 10, 1915. Decided March 6, 1915.)

[146 Pac. 1103.]

*Partnership—"Transacting Business" Under Fictitious Name—*
*What Does not Constitute.*

> 1. K., a nonresident, purchased cattle in Montana, signing the name
> of "K. Bros." to the contract, although there was no such firm and he
> had never done business under that designation before, its use in this
> instance having been occasioned through carelessness, inadvertence or
> the lack of appreciation of its effect, and the fact that he and his
> brother, formerly residing together, were sometimes referred to as "K.
> Brothers." Section 5509, Revised Codes, provides that an individual
> who transacts business in a firm name must file the certificate prescribed
> therein. Such certificate had not been filed. *Held,* that the execution
> of the contract in this isolated instance, in the above circumstances, did
> not constitute "transacting business," so as to defeat K.'s right to sue
> on the contract under the penalty prescribed by the section.
>
> [As to what constitutes a partnership, see note in 115 Am. St. Rep.
> 400.]

*Appeal from District Court, Custer County; Sydney Sanner,*
*Judge.*

ACTION by Lambert Keffler against T. R. Wilds. From a
judgment for plaintiff and an order denying a new trial, de-
fendant appeals. Affirmed.

Cause submitted on briefs of counsel.

*Messrs. Tison & McKinnon* and *Messrs. Loud, Collins, Brown,*
*Campbell & Wood,* for Appellant.

*Mr. Geo. W. Farr* and *Mr. H. E. Herrick,* for Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

In May, 1910, a contract in writing was executed which recites
that it was between T. R. Wilds, of Miles City, Montana, the
party of the first part, and Keffler Bros., of Trotters, North

Dakota, the parties of the second part. The contract is signed, "T. R. Wilds, Party of the First Part," and "Keffler Bros., Parties of the Second Part," and provides for a sale of certain range cattle by the party of the first part to the parties of the second part, at a stipulated price per head. The cattle are described with reference to their condition and breeding, and $1,500 was to be and was in fact paid down as a part of the purchase price. The contract further provides: "That should said cattle not meet the requirements of breeding, and condition guaranteed by the party of the first part, after said herd is looked over by the parties of the second part, then and in that event this contract shall be declared void and the party of the first part shall pay back to the said parties of the second part the said sum of $1,500 paid down by them on the signing of this contract." This action was commenced by Lambert Keffler to recover the $1,500 with interest. In his amended complaint he alleges that the contract was between him individually and Wilds, but sets forth the written instrument as a part of his pleading. He alleges the failure of Wilds to deliver the cattle according to the terms of the contract, his promise to refund the earnest-money, and his failure to keep that promise. The answer admits the due execution of the contract, denies any breach, and alleges that plaintiff was transacting business under the firm name of Keffler Bros., without having complied with the provisions of section 5509, Revised Codes, and therefore is denied the right to maintain this action. The reply is in effect a general denial of these allegations. Upon the trial plaintiff testified to the circumstances surrounding the making of the contract, to the failure of defendant to furnish the cattle according to its terms or to repay the $1,500, and offered in evidence a letter from the defendant acknowledging the indebtedness and asking further time within which to make payment. In explanation of the use of the firm name "Keffler Bros.," plaintiff testified that the agreement was drafted by John Gibb in the presence of plaintiff, defendant and one Deffenbach; that: "The witness to the contract, Mr. Deffenbach, was with us and

introduced me to Mr. Gibb when we went in and told him what we wanted. Mr. Gibb says, 'What is the name?' and Mr. Deffenbach spoke up and says, 'Keffler Brothers,' and he looked around to me, and I says, 'Yes, that will be all right.' Q. Was there anyone else connected with you in making this contract? A. No, sir. There is no such firm as Keffler Bros., although I signed that name to this contract." He further testified that he and his brother formerly resided together and were frequently referred to as Keffler Bros., although each conducted business in his own name; and, finally, that he had not complied with the requirements of section 5509, above.

At the conclusion of the plaintiff's case, defendant moved for a nonsuit and for a directed verdict, and, these motions being denied, rested without introducing any evidence on his own behalf. The court directed a verdict for plaintiff, and from the judgment entered thereon, and from an order denying him a new trial, defendant appealed.

In this court but one question is presented, *viz.*, the right of plaintiff to maintain this action upon the contract as it is set forth in the complaint.

Section 5509 provides that every individual who transacts business in this state under a designation purporting to be a [1] firm name shall file with the county clerk of the county in which the principal place of business is situated a certificate stating in full the name of the individual so conducting business in such firm name, and shall cause publication of the certificate to be made once a week for four successive weeks. The penalty for failure to comply with these requirements is that he shall not maintain any action upon, or on account of, any contract made in such firm name until he shall have complied with the statute. The contention of counsel for appellant is that the execution of this contract, under the circumstances set forth, constituted "transacting business" within the meaning of section 5509 above, and, since plaintiff failed to comply with the requirements of that section, he is denied the right to maintain his

action. If counsel's premise is correct, their conclusion follows as of course.

Our attention has not been called to any decided case construing a statute applicable to individuals, such as our section 5509 above; but the principle underlying this case has been under consideration many times in cases involving the right of a foreign corporation to "conduct business" or "transact business" without first complying with local laws.

In Alabama and Indiana it is held that the single act of the foreign corporation done in the exercise of its ordinary corporate functions is within the prohibition of the statute and constitutes transacting business. (*Farrior* v. *New England M. S. Co.,* 88 Ala. 275, 7 South. 200; *Equitable L. & Ins. Assn.* v. *Peed* (Ind.), 52 N. E. 201.) Following the uniform rule of practice which prevails in the federal courts, the supreme court of the United States applied the same rule of construction to the Constitution and laws of Alabama, as that announced by the highest court of that state. (*Chattanooga Nat. B. & L. Assn.* v. *Denson,* 189 U. S. 408, 47 L. Ed. 870, 23 Sup. Ct. Rep. 630.)

A series of acts by a foreign corporation which might be grouped as one was held to constitute "doing business" within the meaning of the Illinois statute, in *Pennsylvania* v. *Bauerle,* 143 Ill. 459, 33 N. E. 166.

In Kansas a distinction is drawn between an isolated act incidental only to the main purpose of the corporation's business, and a single act which is a part of its proper corporate functions. The former is held not to disqualify the foreign corporation to invoke the aid of the local courts (*Sigel-Campion L. S. Com. Co.* v. *Haston,* 68 Kan. 749, 75 Pac. 1028), while the latter is determined to constitute "doing business" within the meaning of the statute. (*John Deere Plow Co.* v. *Wyland,* 69 Kan. 255, 2 Ann. Cas. 304, 76 Pac. 863.) In this last case the Kansas court, after referring to the authorities which maintain the rule, "the doing of a single act of business in the domestic state by a foreign corporation does not constitute the doing or carrying

on of business within the meaning of the statutory and consti-
tutional provisions," observed: "For the most part these au-
thorities merely hold that the expression 'doing business' is not
to be given such a strict and literal construction as to make it
apply to any corporate dealing whatever. They turn upon the
character, rather than upon the amount, of business done. This
is illustrated by the fact that the particular transactions under
consideration are frequently described as 'independent,' 'iso-
lated,' 'occasional,' 'incidental,' 'accidental,' 'casual,' 'not of a
character to indicate a purpose to engage in business within the
state,' as well as 'single.' In the decision most frequently cited
in this connection (*Cooper Mfg. Co.* v. *Ferguson,* 113 U. S. 727,
28 L. Ed. 1137, 5 Sup. Ct. Rep. 739), stress is laid upon the cir-
cumstance that there was no purpose to do any other business
in the state."

Some of the authorities which exempt an isolated act from
the inhibition of laws such as ours are: 13 Am. & Eng. Ency.
Law, 2d ed., 869; 19 Cyc. 1268; 6 Thompson's Com. on the Law
of Corporations, sec. 7936; *Suydam* v. *Morris, C. & B. Co.,* 6 Hill
(N. Y.), 217; *Commercial Bank* v. *Sherman,* 28 Or. 573, 52 Am.
St. Rep. 811, 43 Pac. 658; *Hogan* v. *St. Louis,* 176 Mo. 149,
75 S. W. 604; *Hazeltine* v. *Mississippi Valley F. I. Co.* (C. C.),
55 Fed. 743; *Sparrow* v. *Kohn,* 109 Pa. 359, 58 Am. Rep. 726,
2 Atl. 498; *Florsheim Bros.* v. *Lester,* 60 Ark. 120, 46 Am. St.
Rep. 162, 27 L. R. A. 505, 29 S. W. 34; *Oakland S. M. Co.* v.
*Fred W. Wolf Co.,* 118 Fed. 239, 55 C. C. A. 93; *Gates Iron
Works* v. *Cohen,* 7 Colo. App. 341, 43 Pac. 667; *Henry* v.
*Simanton,* 64 N. J. Eq. 572, 54 Atl. 153; *Delaware etc. Canal
Co.* v. *Mahlenbrock,* 63 N. J. L. 281, 45 L. R. A. 538, 43 Atl.
978; *Tabor* v. *Goss & Phillips Mfg. Co.,* 11 Colo. 419, 18 Pac.
537; *Cooper Mfg. Co.* v. *Ferguson,* 113 U. S. 727, 28 L. Ed. 1137,
5 Sup. Ct. Rep. 739.

If the analysis of the decided cases as made by the supreme
court of Kansas above is correct—and we think it is—then the
solution of the question before us depends upon the character
of the act in question, rather than upon the number or magni-

tude of the transactions in which plaintiff employed the firm name. That this is the correct rule seems to be borne out by the statute itself. Section 5509, above, requires that the individual who transacts business in a firm name shall cause a proper certificate to be filed with the county clerk of the county where his principal place of business is situated. This plaintiff is a resident of North Dakota, and it is inconceivable that it was the intention of the legislature that he should establish an office in this state and otherwise conform to the requirements of section 5509 in order to render valid a single transaction under the circumstances surrounding this one. He never transacted business in the firm name before, and from the fact that he testified that there is no such firm as Keffler Bros., it is fairly inferable that he does not intend hereafter to employ such designation again. Indeed, the use of the name "Keffler Bros." in this instance was occasioned through carelessness, inadvertence or a lack of appreciation of the effect such use might possibly entail. The object of the statute is prevention of fraud and imposition; and since there is no evidence of any attempt to deceive, but, on the contrary, proof that defendant fully appreciated the fact, that his business was done with Lambert Keffler individually, we conclude that the use of the firm name in this isolated instance, and, under the circumstances herein disclosed, did not infringe the statute or prevent plaintiff from invoking the aid of the courts of this state to enforce his claim.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE SANNER, being disqualified, did not hear the argument and takes no part in the foregoing decision.