## MILLER BREWING CO. v. CAPITOL DISTRIBUTING CO. et al.

No. 5752.   Decided October 27, 1937.   (72 P. 2d 1056.)

For Opinion on Rehearing, see 94 Utah 51, 77 Pac. 2d 359.

*W. B. Kelly,* of Salt Lake City, for appellant.

*E. R. Christensen,* of Salt Lake City, for respondents.

WOLFE, Justice.

The plaintiff and defendant companies are, respectively, Wisconsin and Utah corporations. The plaintiff entered into an agreement with the Capital Distributing Company whereby the former agreed to ship beer to the latter for sale by the latter in Utah. Later, an instrument was signed by defendants W. R. Hess, Fred Lundberg, and I. Eisner, all officers of the Capitol Distributing Company, guaranteeing payment within "30 days from date of each such sale of the price of all such goods now or hereafter to be sold and/or delivered to the said Capitol Distributing Company by the said Miller Brewing Company, including any and all charges said Miller Brewing Company *has made* or may make for cooperage, cases and bottles containing such goods." (Italics added.) The guarantee may have covered some past indebtedness for cooperage, cases, and bottles, but it was mainly to secure the price of future sales. The contract of guaranty was executed in the Salt Lake office of the Capitol Distributing Company, handed to Roloff, an agent for the plaintiff, and sent on to Milwaukee by him.

A net money judgment arrived at by allowing part of the counterclaim was rendered in favor of plaintiff against the Capitol Distributing Company, but judgment of no cause of action was rendered against plaintiff in favor of the individual defendants Hess, Lundberg, and Eisner. Plaintiff appeals alone from this judgment of dismissal. Plaintiff had done nothing as required by sections 18-8-1 to 18-8-3, R. S. Utah 1933, inclusive, which pertain to foreign corporations doing business in Utah. The judgment of dismissal was on the ground that entering into the contract of guaranty in this state was "doing business" therein, and hence, not having qualified, the contract was void. The only question is: Was the making and delivery of the contract of guaranty in this state for the payment of future and past indebtedness for the price of goods sold in interstate commerce "doing business," as those words are used in section 18-8-1, R. S. 1933?

It is said the cases of *Dunn* v. *Utah Serum Co.*, 65 Utah 527, 238 P. 245, and *First National Bank* v. *Parker,* 57 Utah 290, 194 P. 661, 12 A. L. R. 1373, are controlling in favor of the judgment of the court. We think not. In the Parker Case, it was conceded that the company which transferred the notes to the plaintiff bank was doing business within the state so that the question of whether the giving of the notes was doing business was not before the court. A casual reading of the Dunn Case reveals that the Fort Dodge Serum Company, against whose note and mortgage the defense of failing to qualify was made, did not make the note and mortgage as an incident to interstate sales, and that it leased property of the Utah Serum Company and commenced to carry on the business of making serums. The two cases are not parallel.

In the instant case, the guaranty was incidental to the business of selling goods in interstate commerce. If the goods sold in interstate commerce were such as to permit of a chattel mortgage, a note and mortgage on the articles to secure the sale would not be "doing business." *Advance-Rumely Thresher Co., Inc.,* v. *Stohl,* 75 Utah 124, 283 P. 731. Certainly, therefore, a note unsecured given for the purchase price of interstate sold goods would not be doing business. Is it any more doing business if the note were secured by a mortgage on articles other than the ones sold or by securities handed over to secure the note? The answer seems plain. *Charter Oak Life Ins. Co.* v. *Sawyer,* 44 Wis. 387. Certainly, a guaranty agreement by officers of the purchaser to secure the note would be equivalent to a security delivered. And because it secures not only a contemporaneous transaction, but future transactions, would not change the principle. And if it secured a past debt for the price of an interstate sold article, it would not be doing business. *Sunny South Lumber Co.* v. *Neimeyer Lumber Co.,* 63 Ark. 268, 38 S. W. 902; *Covey Cotton Oil Co.* v. *Bank of Ft. Gaines,* 15 Ala. App. 529, 74 So. 87. Ordinary steps to collect the sale price

of interstate sold goods done within the borders of the state where the goods were delivered is not doing business. Taking a note or guaranty for the payment of the debt is one of the means of assuring or collecting it. And so hold the cases. In *Heinrich Chemical Co.* v. *Welch* (Mo. App.) 300 S. W. 1001, the facts were very similar. Three parties executed a contract of guaranty for goods to be sold to another party. In that case the guaranty was executed in Missouri and sent to Minneapolis, Minn., where its approval was indorsed by the plaintiff company. The fact that it was approved in the state of domicile of the foreign corporation does not differentiate it from the instant case. The principle which controls is that in the instant case and in the Welch Case the transactions were natural and ordinary incidences to interstate commerce. *Heinrich Chemical Co.* v. *Herman* (Mo. App.) 251 S. W. 162; *Rose City Bottling Works* v. *Godchaux Sugars, Inc.*, 151 Ark. 269, 236 S. W. 825; *General Motors Acceptance Corporation* v. *Shadyside Coal Co.*, 102 W. Va. 402, 135 S. E. 272; *Wilson* v. *Ohio Farmers' Ins. Co.*, 164 Ind. 462, 73 N. E. 892; *White Sewing Machine Co.* v. *Sneed* (Tex. Civ. App.) 174 S. W. 950; *Ichenhauser Co.* v. *Landrum's Assignee*, 153 Ky. 316, 155 S. W. 738; *Sigel-Campion Live-stock Comm. Co.* v. *Haston,* 68 Kan. 749, 75 P. 1028. When an act done in a state is a mere incident to interstate commerce, it does not violate the statute. *Covey Cotton Oil Co.* v. *Bank of Ft. Gaines,* supra; *Citizens' Nat. Bank* v. *Buckheit,* 14 Ala. App. 511, 71 So. 82.

The judgment is reversed, and the trial court instructed to make and enter findings, conclusions, and judgment in favor of the appellant in accordance with the principles laid down in this opinion. Appellant is awarded its costs.

FOLLAND, C. J., and HANSON, J., concur.

MOFFAT, Justice (dissenting).

The appellant Miller Brewing Company is a Wisconsin corporation. The Capitol Distributing Company is a Utah

corporation. The personal defendants are residents of Utah. The Miller Brewing Company commenced this action in the Third district court of the state of Utah in and for Salt Lake county to recover a judgment against the Capitol Distributing Company for money due and owing for the sale of beer by the former to the latter, and in the same action sought to recover judgment against W. R. Hess, Fred Lundberg, and I. Eisner, as guarantors upon an alleged guaranty contract whereby they agreed to guarantee payment of all accounts due or to become due from the Distributing Company to the Brewing Company.

Through its agents, the Brewing Company contacted Fred Lundberg, representative of the Distributing Company, and it was arranged that the Brewing Company would ship beer to and would assist the Distributing Company in selling it in Utah. Advertising matter, Neon signs, and equipment were to be furnished by the Brewing Company, and title was to remain in it. In pursuance of this agreement, beer was shipped to Utah by the Brewing Company to the Distributing Company. Signs were erected and maintained, advertising Miller Brewing Company beer. After this business had been conducted for a short time, an agent of the Brewing Company called upon the respondents, W. R. Hess, Fred Lundberg, and I. Eisner, in Salt Lake City, and secured from them as individuals a separate written document guaranteeing payment to the Miller Brewing Company of any and all indebtedness then owing by the Distributing Company to appellant, and any future obligations contracted between the corporations. The contract of guaranty was a separate agreement. It became effective as a contract imposing liability when and only when the Distributing Company breached its contract with the Brewing Company. An examination of the case of *Advance-Rumely Thresher Company* v. *Stohl*, 75 Utah 124, 283 P. 731, and the cases there cited, reveals a different situation from that in the instant case.

The taking of an order in one state for machinery, goods, or other articles to be purchased from a foreign corporation is generally, in fact almost uniformly, held to be a transaction in interstate commerce. Likewise, the taking of a chattel mortgage to secure payment of the contract is held to be an incident of the interstate commerce transaction. However, where security is taken, the security must be first exhausted, lost, or shown to have become valueless without fault of the mortgagee before a liability arises under the contract of guaranty. Even when there is a contract of warranty as to the article purchased, made by the foreign corporation as one of the terms of the sale contract, as is common in such cases as the *Advance-Rumely Thresher Co.* v. *Stohl,* supra, until the foreign corporation comes into the state and qualifies or brings suit on its contract, the purchaser would be compelled to go to the domicile of the foreign corporation to sue the foreign vendor. Thus, such a guaranty contract is a contract of the domicile of the vendor. But when a foreign corporation makes sales in interstate commerce and then, to secure payment, not by mortgage or property security, but by personal guarantee, enters into a personal guarantee contract, with no liability arising against the guarantors until a breach of the contract, the situation would seem to be just the reverse of the mortgage contracts, and if the vendor desires to seek redress he must either have his contract a part of his interstate contract or have it executed within the domicile of the vendor.

Appellant states that the only question involved in this appeal is whether the Miller Brewing Company may maintain this action against the individual defendants above named upon the guaranty contract. In support of that question, appellant argued the question as to whether the contract of guaranty was one so intimately connected with the interstate commerce transactions between the Miller Brewing Company and the Distributing Company as to be interstate commerce. It is admitted that the Brewing Company

had not qualified to do business in the state of Utah as provided by law.

There is proof to support the finding of the trial court that the guaranty contract was entered into in the state of Utah independently of the interstate commerce between the Brewing Company and the Distributing Company. Appellant, however, has other difficulties on this appeal. Appellant's assignments of error are directed only to findings numbered 5 and 6. If the assignment as to finding No. 5 fails, then the assignment as to No. 6 must go with it, as finding No. 6 relates only to the matter of attorney's fees provided for in the guaranty agreement. Finding No. 5 reads:

"That the said defendants, I. Eisner, Fred Lundberg, and W. R. Hess, executed said contract of guaranty in the State of Utah, and delivered the same to the plaintiff and that the plaintiff at the time of the execution and delivery of said contract was not qualified to do business within the State of Utah, having theretofore failed to file in the offices of the county clerk of the Salt Lake County or any other county in said State or with the Secretary of the State of Utah its articles of incorporation as provided for by law relating to foreign corporations, and that said plaintiff at no time during the transaction had with any of said defendants qualified to do business in the State of Utah as a foreign corporation; *that because of said corporation's failure to comply with the laws of the State of Utah relating to foreign corporations and by the failure to file its articles of incorporation the contract of guaranty between the plaintiff and the defendants Fred Lundberg, I. Eisner, and W. R. Hess is void, invalid, and of no force and effect.*" (Italics added.)

It will be observed that the part of the finding preceding the last clause which is in italics constitutes findings of fact proper and material. No objection is raised to that part of the finding. The last clause is really a conclusion and follows as such from the first part of the finding. It would have been better form for the last clause of the finding to have been among the conclusions. Appellant, however, assigns error only to the finding "wherein it (the court) finds that the contract of guaranty between plaintiff and defen-

dants Hess, Lundberg and Eisner is void and invalid, and of no force and effect," and proceeds to suggest that the guaranty contract is a matter incidental to interstate commerce.

The respondents' position as to appellant having attacked a conclusion of law as a finding of fact, and that the findings of fact support the conclusion attacked, is well taken. Respondents' position is that under the assignments of error and the argument made by appellant, there is nothing presented to this court for review.

Findings of fact and conclusions of law serve separate and distinct functions. What the facts in the case are, as shown by the evidence, is reflected in the findings of fact made by the court. An assignment of error as to findings of fact raises only the question as to whether the evidence is sufficient to support the finding, and, as stated in rule VI of this court, "when the alleged error is on the ground of insufficiency of the evidence to sustain or justify the verdict or decision, the particulars wherein the evidence is so insufficient shall be specified." See, also, *Thomas* v. *Perry Irr. Co.*, 63 Utah 490, 227 P. 268.

In the instant case, the assignment raises no question as to any finding of fact. It does direct attention to a conclusion of law in a paragraph of the findings of fact which might well have been omitted from the finding. The assignment of error herein does not reach the finding of fact. If the assignment be regarded as an attack upon the conclusions of law, appellant is no further advanced, in my opinion, for the reason the conclusions are supported by the findings of fact.

The court found that the contract of guaranty was entered into in the state of Utah; that plaintiff was not authorized to do business in the state. The invalidity of the contract follows as a matter of law, as provided by section 18-8-5, R. S. Utah 1933:

"Any foreign corporation doing business within this state and failing to comply with the provisions of sections 18-8-1 to 18-8-3, inclusive, shall not be entitled to the benefit of the laws of this state relating

to corporations, and shall not sue, prosecute or maintain any action, suit, counterclaim, cross complaint or proceeding in any of the courts of this state on any claim, interest or demand arising or growing out of or founded on any contract, agreement or transaction made or entered into in this state by such corporation or by its assignor or by any person from, through or under whom it derives its interest or title or any part thereof, and shall not take, acquire or hold title, possession or ownership of property, real, personal or mixed, within this state; and every contract, agreement and transaction whatsoever made or entered into by or on behalf of any such corporation within this state or to be executed or performed within this state shall be wholly void on behalf of such corporation and its assignees and every person deriving any interest or title therefrom, but shall be valid and enforceable against such corporation, assignee and person; and any person acting as agent of a foreign corporation which shall neglect or refuse to comply with the foregoing provisions is guilty of a misdemeanor and shall be personally liable on any and all contracts made in this state by him for or on behalf of such corporation during the time that it shall be so in default; *provided*, that this section shall not be held to apply to persons acting as agents for foreign corporations for a special or temporary purpose or for a purpose not within the ordinary business of such corporation, nor shall it apply to attorneys at law as such."

The judgment of the lower court should be affirmed.

LARSON, Justice (dissenting).

I concur with the views expressed by MOFFAT, J., in his dissenting opinion.