CONSOLIDATED WAGON & MACHINE CO. v. WRIGHT.

No. 3205.   Decided June 21, 1920.   (190 Pac. 937.)

1. SALES—PURCHASER HELD NOT BOUND BY CARD SIGNED SHOWING GOODS WERE SATISFACTORY. In seller's action for the purchase price of a harvesting machine, defended on the ground that it failed to work as warranted, a satisfaction card signed by defendant without reading it, upon representation of plaintiff's expert that it only showed the latter's presence, and which stated that the machine worked satisfactorily, was of no more solemnity than such an oral declaration of defendant would have been, and did not bind him where the facts were otherwise as shown by the expert's own statement, buyer's complaints, and expert's return to operate the machine.

Appeal from First District

2. SALES—WAIVER OF NOTICE OF BREACH OF WARRANTY BY TAKING CHARGE OF SETTING UP WARRANTED MACHINE. The rule that a buyer impliedly accepts a warranted machine if he fails to report, in the time required by the warranty, that the machine fails to work, does not apply where the seller by delivering the machine unassembled and taking charge of assembling and trying it out in the buyer's field waived such notice.[1]

3. SALES—BUYER'S KEEPING MACHINE MORE THAN CONTRACT FIVE DAYS' TRIAL LIMIT HELD TO BE BY SELLER'S CONSENT. In a seller's action against buyer, a contention that the buyer retained the harvesting machine more than the five days allowed for trial under the terms of warranty is not well taken, where it was shown that the harvester was only operated while seller's employes were on the buyer's ranch overseeing its operation, since any extended time was by seller's consent.

4. SALES—SELLER WAIVED RETURN OF UNSATISFACTORY MACHINE BY REFUSAL TO ACCEPT IT. Where buyer claimed the machine purchased did not fulfill its warranty, and was notified that seller would not receive it, the seller waived any right to insist that the buyer return the machine.

5. SALES—WAIVER OF INITIAL PAYMENT ON PRICE BY DELIVERY WITHOUT IT. Where a seller delivered a machine to the buyer, assembled it on his premises and tested it out without exacting first payment, and it proved unsatisfactory, the seller waived the agreement for payment at the time of delivery.

6. APPEAL AND ERROR—IRREGULARITY IN EVIDENCE OF NOTICE OF DEFECT OF GOODS HELD HARMLESS. In seller's action against buyer for the price of a machine which defendant claimed did not fulfill a warranty, irregularity in permitting in evidence carbon copy of buyer's notice to seller of defect, without accounting for the notice being mailed as required by law, *held* harmless in view of circumstances.

7. APPEAL AND ERROR—POORLY WORDED INSTRUCTION HELD HARMLESS. Where in view of the evidence the jury could not have been misled to appellant's prejudice by a poorly worded instruction respecting waiver, any error therein must be held harmless.

Appeal from District Court, First District, Box Elder County; *J. D. Call*, Judge.

[1] *Consolidated Wagon & M. Co.* v. *Barben*, 46 Utah, 377, 150 Pac. 949.

Action by the Consolidated Wagon & Machine Company against H. G. Wright. Verdict and judgment for defendant, and plaintiff appeals.

AFFIRMED.

*W. J. Lowe,* of Brigham, and *Morris & Callister,* of Salt Lake City, for appellant.

*Walters* and *Harris,* of Logan and *Le Roy Young,* of Brigham, for respondent.

FRICK, J.

The plaintiff commenced this action against defendant to recover the purchase price of what is called a Massey-Harris harvester. In its complaint the plaintiff in substance alleged that on the 3d day of May, 1916, it sold to the defendant a harvester for the sum of $950, which sum the defendant agreed to pay as follows: $60 when the harvester was delivered, $450 on November 1, 1916, and the remainder on November 1, 1917—that said harvester was sold pursuant to the terms of a certain contract and warranty which are attached to and made a part of the complaint; that the defendant had failed to comply with the terms of said contract and had failed to pay the purchase price of said harvester, or any part thereof, all of which was due, together with interest, etc. The defendant filed an answer to said complaint in which he admitted the execution of the contract attached to plaintiff's complaint and denied that he was indebted to the plaintiff in any sum or amount. The defendant, as an affirmative defense, also relied on the terms of the warranty which was a part of the contract of sale, and to which we shall more specifically refer hereinafter, and averred that said harvester did not fulfill the terms of said warranty, stating the facts with respect thereto, and, in effect, further averred that the plaintiff had waived certain requirements of said warranty to which we shall more fully refer hereafter.

The case was tried to a jury, which returned a verdict in favor of the defendant, and the plaintiff appeals.

The plaintiff has assigned, and in its brief relies upon the following errors: (1) That the court erred in refusing to direct a verdict in favor of plaintiff; (2) that the court erred in its instructions to the jury; (3) that it erred in refusing to charge as requested by plaintiff; and (4) that it erred in the admission and exclusion of certain evidence and in certain other rulings during the course of the trial.

Preliminarily, plaintiff's counsel contend that the defendant had failed to plead a waiver, and hence its demurrer to that part of defendant's answer should have been sustained. It is not necessary to enter upon an analysis of the pleadings. It must suffice to say that the facts constituting the alleged waiver were sufficiently pleaded to authorize the admission of the evidence relating thereto, and hence this contention cannot prevail.

Proceeding, now, to a consideration of the other errors assigned: The plaintiff relies upon the terms of the contract of warranty pursuant to which the harvester in question was sold and delivered. The warranty, so far as material here, reads as follows:

"It is warranted that the machinery and goods hereby sold are made of good material, and durable with good care, if properly operated by competent persons with sufficient steam, gasoline, horse, or other power, as the case may be, and the printed rules and directions of this company and of the manufacturer are intelligently followed. If by so doing, after trial of five days by the second parties, said machinery or other articles shall fail to fulfill the warranty, written notice thereof shall at once be given to the company at Salt Lake City, Utah, and also to the agent through whom received, stating in what parts and wherein it fails to fulfill the warranty, and a reasonable time shall be. given to said company to send a competent person to remedy the difficulty, the second parties rendering necessary and friendly assistance, said company reserving the right to replace any defective part or parts, and if then the machinery cannot be made to fill the warranty the part that fails is to be returned by the second parties free of charge to the place where received and the company notified thereof, and at the company's option another substituted therefor that shall fill the warranty, or the notes and money for such part immediately returned and the contract rescinded to that extent and no further claim made on the company. Failure to so make such trial, or to

give such notice in any respect shall be conclusive evidence of due fulfillment of warranty on the part of said company and that the machinery is satisfactory to the second party, and the company shall be released from all liability under the warranty. Any assistance rendered by the company, its agents or servants, in operating said machinery or in removing any actual or alleged defects, either before or after the five days' trial shall in no case be deemed any waiver of, or excuse for, any failure of the second parties to fully perform the conditions of this warranty. * * * "

A contract and warranty in terms precisely like the one in question here was passed on by this court in the case of *Consolidated Wagon & M. Co.* v. *Barben*, 46 Utah, 377, 150 Pac. 949. It was there held that the defendant, Barben, had failed to comply with the terms of the warranty, and that Consolidated Wagon & Machine Company had not waived the terms thereof, and hence the defense that was there set up could not prevail. Counsel for plaintiff insist with much vigor that the Barben Case and the cases therein cited in its support control the case at bar. We have carefully read and considered all of the evidence in the case at bar, and, after doing so, are unable to yield assent to counsel's contention. The controlling facts in this case, stating them as briefly as possible, in substance are these: The defendant, in May, 1916, purchased from the plaintiff what in the record is designated as a Massey-Harris harvester, hereinafter, for convenience, called harvester, which was a combined reaper and thresher. The harvester was sold pursuant to the terms of the warranty hereinbefore set forth. While in the contract of sale the harvester was sold f. o. b. Salt Lake City, it was in fact delivered to the defendant at the town of Garland, in Box Elder county, Utah, where, according to the evidence, the plaintiff conducted a branch house or branch office. The harvester was delivered in boxes and was not assembled or "set up" in working condition. About the 1st of August, 1916, and some time before defendant's grain was ripe, and at about the time the harvester was delivered at Garland, the plaintiff sent one D. W. Pearson from its principal office at Salt Lake City, who in the record is designated as one of plaintiff's "general experts,"

to assemble or "set up" the harvester. Mr. Pearson assembled the parts, "set up," as he called it, the harvester, but, in view that defendant's grain was not yet ripe, he did not remain at defendant's ranch any longer than was necessary to complete the assembling of the harvester. Pearson, however, returned to the ranch on the 14th of August, at which time the grain was ripe and directed and superintended the operation of the harvester. Up to this point there is no conflict in the evidence. From this point on, however, the testimony of plaintiff's and defendant's witnesses differ very materially on some points. , The jury, were, however, justified in taking the version of defendant's witnesses as correct, and hence in this statement we shall follow the tes-. timony of the defendant's witnesses. The testimony of defendant and his witnesses is to the effect that when Pearson undertook to operate the harvester it failed to fulfill the terms of the warranty in almost every particular. Pearson remained at defendant's ranch from the afternoon of the 14th to the morning of the 16th of August, during which time he directed and superintended the operation of the harvester, and during all of which time, according to the statements of defendant's witnesses, the harvester failed to do good work, but wasted much grain. Pearson left the ranch on the morning of the 16th, but, at the request of the defendant, returned again on the 17th. Pearson himself so states. Mr. Winters, who is designated as plaintiff's manager of the branch house at Garland, went to the defendant's ranch on the 17th, and Pearson returned with Winters to Garland. A few days after Pearson had left the ranch two other employés of plaintiff came to the ranch, and, as the defendant and his witnesses say, brought some castings to replace broken ones. The harvester, however, would not work. The defendant also testified that Mr. Winters, the manager of the branch house at Garland, said that if the grain were his he would save it by obtaining a header to cut it. According to the defendant's statement, after the expert Pearson and the others of the plaintiff's employés had all failed to make the harvester do satisfactory work,

he obtained a header, and by that means harvested his grain. Plaintiff contends, however, that the defendant signed a satisfaction card and delivered it to the expert Pearson on either the evening of the 15th or the moring of the 16th of August, wherein the defendant stated that the harvester was operating to his entire satisfaction. The defendant, and his witness who was present at the time the defendant signed the card, testified, however, that the defendant did not read the card or know its contents, but signed it, as he said, upon the representation of Mr. Pearson that it only contained a statement that Mr. Pearson was present at defendant's ranch and the time during which he was present. At all events, the defendant and all of his witnesses emphatically deny that the harvester was working satisfactorily as represented in the card or that it had fulfilled the warranty in any respect. In this conclusion they, to some extent at least, are indirectly supported by Mr. Pearson himself and by others of plaintiff's witnesses for the reason that, if the harvester had been operating satisfactorily on the evening of the 15th or on the morning of the 16th, when Mr. Pearson left the ranch, why should he return again on the 17th to attempt to overcome some defects? Again, if the harvester were working satisfactorily, then why, according to defendant's statement, should Winters, the branch house manager, advise the defendant to cut his grain with a header, which was in fact done? True, Winters denies this, but the jury had a right to accept defendant's statement in that regard. In this connection counsel, however, insist that the court, nevertheless, erred in permitting the defendant to explain the signing of the satisfaction card. It is contended that, having signed the card, defendant was estopped from explaining or contradicting the statements contained in the card. In our judgment this contention is not sound. The card was in no sense contractual, nor did it contain any statement or admission which, under the circumstances, the defendant was estopped from explaining or denying. The plaintiff was not deceived nor misled; neither did it change its position by reason of any statement or admission contained in the card.

Indeed, according to the expert's own statements, on the very day he left the ranch with the card the defendant followed him to Garland and insisted that the harvester was not working satisfactorily, and the expert returned to the ranch to make it work. Moreover, after that two others of the plaintiff's employés went to the ranch for the same purpose. At most, the card was of no greater solemn-   **1, 2** ity than a receipt or a declaration on the part of the defendant would have been which he had a right to explain, and it was for the jury to say whether his statements under oath or the declaration in the card was correct.

Plaintiff's counsel also vigorously insist that the defendant has failed to comply with some of the material terms of the warranty. They contend that the defendant under the warranty only had the right to try out the harvester for five days, and that after a trial of five days he was required to immediately notify the plaintiff in writing at the home office at Salt Lake City, and also in the same manner notify the branch office at Garland, stating the particulars in which the harvester failed to fulfill the warranty, all of which he failed to do. Counsel therefore contend that defendant must fail in his defense for the same reason that the defendant in the Barben Case failed. As before stated, we cannot yield assent to counsel's contention. If it were true that the defendant here had failed the same as the defendant in the Barben Case failed, counsel's contention should prevail. Counsel, however, construe and apply the terms of the warranty in question too literally. The terms of any contract, whether it be a warranty of something else, must receive a fair and reasonable construction and must be applied in the light of the circumstances and conditions under which the parties acted at the time it was entered into. This case, in its controlling features, is wholly unlike the Barben Case. Here the harvester was not even delivered to the defendant in the ordinary condition, but it was delivered as unassembled machinery. The plaintiff took it upon itself not only to assemble the parts and to "set up" the harvester, as Mr. Pearson says, but it, through its special expert, undertook

to start the operation of the harvester itself. This it had a perfect right to do, and in view that this was the first harvester of the kind which plaintiff had sold it was both prudent and proper that it should have assembled it and supervised the operation. A mere cursory reading of the warranty will disclose that it is based upon the theory that the purchaser of the machine himself starts to operate it, and if, in doing so, it for any reason fails to fulfill the terms of the warranty, then the notice provided for in the warranty must be given. It is quite obvious why that is necessary. Unless such notice be given, the plaintiff would not have an opportunity to make the machine fulfill the warranty or to supply any defective part or parts. Where, however, as here, the seller of the machine, through its expert, sets it up and is thus advised that the parts are properly assembled, and where such expert, on behalf of the plaintiff, starts the operation of the machine while the machine is nominally in the possession of the purchaser, but is, nevertheless, constantly under the control and supervision of the seller's agent and expert, the rule laid down in the Barben Case can have no application. It will not do to say that, although the machine is under the control and supervision of the plaintiff's experts, plaintiff, nevertheless, has no knowledge of whether it fulfills the warranty or not, and must be notified to that effect by the defendant. Plaintiff cannot be heard to say that it does not know the very things that it has employed its own expert to ascertain. It must be assumed that the plaintiff had some object or purpose of its own in having its expert assemble and start the operation of the machine. Its purpose manifestly was that through its expert it would obtain information at first hand as to whether the machine was properly assembled, whether it was properly operated, and if it fulfilled the terms of the warranty. If such was not plaintiff's purpose, we are at a loss to conceive any purpose. All the terms of the warranty proceed upon the theory that the plaintiff has no knowledge respecting the operation of the machine or whether some of its parts are defective, and that upon notice it might by its experts (and it as a corporation

could act only through its agents or experts) have access to the machine to inspect it, and in that way ascertain whether the defects mentioned in defendant's notice in fact exist and how they may be remedied. The notice is to apprise the plaintiff of the defects, and in case it is fully apprised thereof through its experts further notice would be wholly useless. Where, therefore, the seller of a machine through its experts takes the whole matter of assembling and trying it out into its own hands and superintends and directs the operation of the machine, the notice contemplated by the warranty is of no value. Under such circumstances the plaintiff is in possession of all the knowledge and means of knowledge that the defendant, or any one else for that matter, could have, and hence it necessarily follows that the giving of the notice must be deemed to have been waived.

Nor is the contention tenable that the defendant gave the machine more than five days' trial, and that for that reason he had breached the terms of the warranty. According to the statements of the defendant and his witnesses, the harvester was not attempted to be and was not operated after plaintiff's employés had left the ranch. If, **3** therefore, the trial of the harvester was continued for more than during the period of five days, it was through plaintiff's own efforts and by its consent.

It is, however, also insisted that under the terms of the warranty the defendant was required to return the harvester to the plaintiff at the place from which it was received. The evidence on the part of the defendant, however, is that the plaintiff had unconditionally refused to take back the harvester, and hence the jury were justified in finding that the defendant was not required to do a useless thing. It is quite evident from the record that, although the defendant had returned the harvester to the branch house at Garland, he nevertheless would have been sued for the recovery of the purchase price. In view, therefore, that plaintiff had refused to receive the machine if returned, nothing could have been accomplished by its return, and the law does not require the doing of a useless thing. Moreover, a careful pe-

rusal of the warranty will disclose that the return of the machine is required to the end that in case the plaintiff elects to rescind the contract and to return the notes evidencing the purchase price to the purchaser the machine shall be returned so as to place both parties in status quo. The plaintiff, according to the defendant's statements, having refused to receive the harvester upon any conditions, and in constantly claiming the full benefit of the sale and delivery of the harvester and insisting upon the payment of the full purchase price, the return of the machine must be deemed to have been waived by it. The plaintiff could not insist upon having the machine returned to it and also being paid the full purchase price therefor.

Nor, in view of the facts and circumstances of this case, is there any merit to the contention that the defendant cannot prevail because the defendant failed to pay the $60 as the initial payment of the purchase price. Under the terms of the contract the $60 was payable upon the delivery of the harvester. We have pointed out the conditions under which the delivery was made, and that the plaintiff constantly kept supervision, if not actual control, over the harvester while it was being tried out. The plaintiff could have insisted upon the payment of the $60 at the time the machine was taken from Garland to defendant's ranch, and it could have refused to assemble or attempt to operate it until that amount had been paid. It could, however, also waive the prompt payment of that amount, which it did by its acts and conduct under the circumstances.

It is, however, insisted that for the reason that the defendant testified that he had in fact mailed the written notice required by the warranty to the plaintiff at its home office the court erred in permitting him to introduce a carbon copy of such notice without first laying the proper foundation for its introduction by accounting for the original, and that the defendant by his own testimony proved that the notice was not mailed as required by law. While perhaps the evidence respecting the mailing of the notice was irregularly admitted, yet in view of all the circum-

stances and for the reasons already stated, the irregularity was harmless.

Nor did the court err in its charge to the jury. While it is true that the instruction respecting waiver was not happily worded and might have been made more specific, yet, in view of all the evidence, the jury could not have been misled by the instruction, and the plaintiff was not prejudiced in any way thereby. If the jury believed the evidence produced by the defendant, they could not have found the facts different than they did.

Nor did the court err in refusing plaintiff's requested instructions. The requests, in view of the facts and circumstances, stated the law too favorably for the plaintiff, and if the court had charged as requested it would have constituted error.

We have carefully considered the evidence and the whole proceedings, and are forced to the conclusion that the facts were fully and fairly presented to the jury; that the case on the part of the plaintiff was well presented, and that, while the jury might have found some of the controlling issues in favor of the plaintiff, yet there is ample evidence in the record to justify the finding in favor of the defendant. Moreover, in our judgment, the rights of the plaintiff were fully protected in the course of the trial.

We have not referred to the numerous cases cited by counsel for both parties for a reason that in view of the controlling facts and circumstances of this case none of the cases cited is in point.

For the reasons stated, the judgment is affirmed, with costs.

CORFMAN, C. J., and WEBER, GIDEON and THURMAN, JJ., concur.