PFAUDLER COMPANY, Respondent, vs. WESTPHAL, Appellant.

*May 11—June 21, 1926.*

*Corporations: Foreign corporations not licensed to do business in state: What constitutes interstate commerce: Installation of equipment: Sales: Waiver of defects: Renewal of purchase-money notes.*

1. If the installation of equipment sold by an unlicensed foreign corporation amounted to a doing of business within the state, the contract for its purchase was void under sec. 226.02, Stats., and its claim thereunder unenforceable, but if the installation of the equipment was a mere incident to a contract involving interstate commerce, the contract of sale is valid and enforceable; and the question whether the contract involves a transaction of interstate commerce is one in which the decisions of the United States courts are decisive. p. 489.

2. Whether an agreement to install an apparatus, device, or article under a contract of sale brings it within the field of interstate commerce depends principally upon whether the installation is a mere incident or whether it is so inherently intricate that to make it an intrastate transaction would amount to a regulation of interstate commerce. p. 490.

3. The installation of glass-lined condensing tanks by an employee of an unlicensed foreign corporation is, by reason of its technical nature and the complexity of the mechanism, an interstate transaction making the contract of sale enforceable. p. 493.

4. The purchaser having failed to call the attention of the seller to alleged defects in the condensing tanks, although making several payments and signing renewal notes, waived his right to damages for such alleged defects. p. 494.

[5. Whether the renewal of purchase-money notes alone operates as a waiver of available defenses arising because of defects in the goods purchased, or creates an estoppel against the buyer, not decided.] p. 494.

APPEAL from a judgment of the circuit court for Washington county: C. M. DAVISON, Circuit Judge. *Modified and affirmed.*

This action was brought by the plaintiff, a New York corporation not licensed to do business within the state of Wisconsin, to recover the balance due upon the sale to the defendant of two glass-lined condensing tanks, which balance was evidenced by two promissory renewal notes, one for $1,500 and the other for $2,000 and interest. The plaintiff was the sole manufacturer in the United States of these tanks, and the defendant operated a condensery in the city of Hartford, Wisconsin, the latter having entered into a contract for the purchase of these tanks to be used in connection with his condensing plant. The purchase order is in the following form:

Order 8219                (Dated at) Hartford, Wisconsin.
Dated 5-7-23                      May 12, 1923.

To the Pfaudler Co., Rochester, N. Y.:

For the price herein stated, the Pfaudler Co. (hereinafter called the company) proposes to furnish in good shipping order the following specified material:

Items — 8 ft. x 24 ft.    Description, No. 399 Enam.

Two 96 ID x 288 in. PC. B. Pfaudler Glass-lined Evp. Milk storage tanks, each having six 48-in. rings and the following fittings:

Two 24-in. 3-blade propeller agitators, motor drive, including 2-speed gear transmission and 3 H P W. H. Motors. 1 18-inch Manhole and cover, 1 hand hole and cover. 1 3-in. Sanitary C. P. valve outlet. 1 Petcock relief valve. 1 Electric light fixture with shade. 1 observation glass in manhole. 1 angle stem thermometer with range of 0 degrees to 100 degrees F. 1 3-in. sanitary inlet. Tanks are 102 in. x 308 in. over all, 29½ inches on each end for motors. Current A. C. 3 Ph, 60 Cycle, 22-V.

See attached drawing and Spec. sheets.

Price, $6,620 net, f. o. b. Rochester, N. Y.

Terms: Cash on installation $1,000. $2,000 by note at 6% Dec. 1, 1923. $3,620 at 6% April 1, 1924.

Shipment Wanted (date), quick.

Via C., M. & St. P. R. R.

Consign to August Westphal, Hartford, Wisconsin.

Conditions of sale: This contract is subject to the conditions of sale as printed on the reverse hereof.

(Signed)    Aug. F. Westphal, Purchaser.

Accepted by E. D. Bennett.

Approved at Rochester, N. Y., May 16, 1923, P. Co. Order No. ——.

The Pfaudler Co.    By Robert Randell, Treas.

The defendant, as a defense, in his answer alleged that the contract of purchase is in violation of sec. 226.02 of the Statutes, in that the plaintiff is a foreign corporation and at no time was licensed to do business within the state of Wisconsin; and that such contract, therefore, as far as the plaintiff is concerned, is void. By way of counterclaim the defendant alleged that the tanks installed by the plaintiff were not in accordance with the specifications, in that the outlets to such tanks were not on a level with the bottom of the tanks, but were half an inch above it; that such outlets as so placed constituted material defects, preventing a full and complete drainage of the tanks; and that by reason of such defects the defendant has sustained damages.

In the special verdict submitted to the jury it was found (1) that it was agreed as a part of the contract that plaintiff, at its own expense, was to install the tanks in defendant's plant so as to make them workable parts and units of said plant; (2) that the defendant notified the plaintiff's representatives that the tanks did not fulfil the terms of the agreement; (3) that the placing of the creases in the tanks was not a material defect in the tanks; (4) that the placing of the outlets above the bottom of the tanks was a material defect in the tanks; (5) that the defendant sustained damages by reason of the defect above found in the sum of $750.

Upon the usual motions after verdict, the court ordered judgment in plaintiff's favor on the note for $1,500 and interest and also on the note for $2,000 and interest, less

the sum of $750 awarded by the jury as damages for defects in the tanks. Judgment having been entered accordingly, the defendant has prosecuted this appeal. The plaintiff served notice of review under the provisions of sec. 274.12 of the Statutes.

*J. H. Schnorenberg* of Hartford and *M. L. Lueck* of Beaver Dam, for the appellant.

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur Wickham,* of counsel, all of Milwaukee, and oral argument by *Mr. Wickham.*

DOERFLER, J. Did the agreement herein involve a transaction included in interstate commerce, or was it one which amounted to a doing of business within the state so as to class it under the head of intrastate commerce? If the installation of these tanks by the plaintiff, an unlicensed foreign corporation, amounted to doing business within this state, then under sec. 226.02 of the Statutes plaintiff's contract is void and the claim thereunder is unenforceable. On the other hand, if the installation of the tanks is a mere incident to a contract which involves a transaction of interstate commerce, then the contract is valid and is enforceable. The question, therefore, is a federal one, in the determination of which the decisions of the supreme court of the United States are decisive and controlling. *Phœnix Nursery Co. v. Trostel,* 166 Wis. 215, 164 N. W. 995.

The case of *Browning v. Waycross,* 233 U. S. 16, 34 Sup. Ct. 578, decided in 1914, was the first to come before that court, and it arose where an agent of a nonresident had sold lightning rods under an agreement to attach the same to a building. It was said that "the business of erecting lightning rods under the circumstances disclosed was within the regulating power of the state and not the subject of interstate commerce." But even in that early case it is evident that the court fully appreciated the fundamental

distinction between an interstate and an intrastate transaction, under facts and circumstances such as are involved in the instant case, for it is said in the opinion:

"Of course we are not called upon here to consider how far interstate commerce might be held to continue to apply to an article shipped from one state to another, after delivery, and up to and including the time when the article was put together or made operative in the place of destination, in a case where, because of some intrinsic and peculiar quality or inherent complexity of the article, the making of such agreement was essential to the accomplishment of the interstate transaction."

From the decision in the *Waycross Case* and other subsequent decisions it is apparent that each case must be decided upon its own peculiar facts. Whether the agreement to erect or install an apparatus, device, or article brings it within the field of interstate commerce depends principally upon whether such erection or installation is a mere incident to an interstate transaction, or whether such erection or installation inherently is so intricate or complex that to include it within the purview of an intrastate transaction would amount to a regulation, restriction, or prohibition of interstate commerce. The attachment of lightning rods to buildings is a simple transaction. It does not require the expert or skilled service of the foreign manufacturer, but, on the contrary, the necessary services involved can be performed efficiently by local employees. It therefore does not become a necessary incident to an interstate agreement. It is not so intricate or complex that to class it within the field of intrastate commerce would amount to a regulation, restriction, or prohibition of an interstate transaction. Therefore, when the case of *Phœnix Nursery Co. v. Trostel, supra,* came before this court for determination, the distinction in the *Waycross Case* was readily recognized, and the transaction involved was decided as being an intrastate transaction.

That the *Phœnix Nursery Case* was correctly determined, and that this court properly interpreted the decision of the supreme court of the United States in the *Waycross Case,* is made manifest by the decision in the case of *General Ry. Signal Co. v. Virginia,* 246 U. S. 500, 38 Sup. Ct. 360.   In that case it was held that a foreign manufacturing corporation which had entered into a contract for the installation within the state of Virginia of certain automatic railway signal systems, in which work both skilled and unskilled labor within the state, consisting of the digging of ditches for conduits, the construction of concrete foundations, and the painting of the structures, was employed, was not engaged in a transaction involving interstate commerce, but was doing local business within the state of Virginia.

Following the two foregoing federal cases, the case of *York Mfg. Co. v. Colley* came before the federal supreme court, and the decision is reported in 247 U. S. 21, 38 Sup. Ct. 430, 62 Lawy. Ed. 963.   In that case "The York Manufacturing Company, a Pennsylvania corporation, sued for the amount due upon a contract for the purchase of ice-manufacturing machinery and to foreclose a lien upon the same.   By answer the defendants alleged that the plaintiff was a foreign corporation, that it maintained an office and transacted business in Texas without having obtained a permit therefor, and was hence, under Texas statutes, not authorized to prosecute the suit in the courts of the state. . . . At the trial it was shown . . . that the contract covered an ice plant guaranteed to produce three tons of ice a day, consisting of gas compression pumps, a compresser, ammonia condensers, freezing tank and cans, evaporating coils, a brine agitator, and other machinery and accessories, including apparatus for utilizing exhaust steam for making distilled water for filling the ice cans.   These parts of machinery, it was provided, were to be shipped from Pennsylvania to the point of delivery in Texas, and were there to

be *erected and connected.* This work, it was stipulated, was to be done under the supervision of an engineer to be sent by the York Manufacturing Company, for whose services a fixed *per diem* charge of $6 was to be paid by the purchasers, and who should have the assistance of mechanics furnished by the purchasers, the supervision to include not only the erection but the submitting of the machinery to a practical test in operation before the obligation to finally receive it would arise." The Texas court held (Tex. Civ. App.), 172 S. W. 206:

"When a foreign corporation is not content with the privilege of having its agents come into this state and take orders for its goods, ship the same to our citizens and collect therefor in our courts, but contends that it has the further right to *transact the business of installing machinery sold by it,* so as to connect it with and make it a part of the property in this state, which was not the subject of interstate commerce, the burden certainly rests upon it of showing that if it be prohibited from transacting such local business such prohibition will, on account of the complex character of its machinery, affect the sale thereof to such an extent as to be a restriction or regulation of its right to sell such machinery."

This decision of the Texas court was reversed by the supreme court of the United States upon the ground that the work performed by the experts in supervising the erection, installation, and the test, as provided for by the contract, was a mere incident to the interstate commerce transaction, and that it did not amount to a doing of business, as was held by the Texas court, within the state of Texas. In that case, also, the case of *General Ry. Signal Co. v. Virginia,* 246 U. S. 500, 38 Sup. Ct. 360, was distinguished. Numerous decisions, both federal and state, in harmony with the decision in the *York Case* are cited in a note to 11 A. L. R. 616.

That the work of installation and supervision required the expert aid of the plaintiff's employees fully appears from

the testimony of the defendant.   He testified, among other things:

"Mr. Bennett and Mr. Kreg [plaintiff's experts] took charge of the installation; they bossed the job; this had to be done by men who knew how to take hold of those glass-lined tanks so that they would not get injured; . . . I furnished men to help them install the tanks." ·

An examination also of the specifications as included in the contract will reveal that the tanks and appliances consisted of a great number of parts, all of which were designed to work in harmony with each other so that the purposes of the articles could be efficiently accomplished.   It also appears that the plaintiff was the sole manufacturer of the tanks and of the mechanical parts connected therewith. The installation and connection, by reason of the delicate and technical nature of the article and the complexity of the mechanism, were such that a refusal to classify the agreement as one coming under the head of interstate commerce would amount to a regulation, restriction, or prohibition of interstate commerce.

We therefore conclude that the lower court properly interpreted the contract as one involving an interstate transaction.

The question of damages on the counterclaim, for an alleged defect in the outlets of the tanks, was submitted to the jury, and the jury awarded the defendant the sum of $750.   Several days after the tanks arrived the defendant claims that he noticed the alleged defect in the outlets and called the attention of plaintiff's representatives thereto. Nothing, however, was done to rectify these alleged defects. No communications of any nature were thereafter sent ·to the plaintiff calling its attention to the alleged defects in the tanks, and no request was made to rectify these alleged defects   When the tanks were installed, the defendant, on July 9, 1923, paid the sum of $1,000 on the contract.   On November 22, 1923, he paid the sum of $500; on March 31.

1924, the sum of $620; and on April 11, 1924, the sum of $1,000, making a total of $3,120. On September 2, 1924, he paid the sheriff the amount of an execution levied upon the judgment. Both of the notes sued upon were renewal notes. At no time when the foregoing payments were made, or when the notes were renewed after they became due, did the defendant mention the alleged defects in the tanks, nor did he claim any allowance in the form of damages sustained on that account. Under these circumstances we conclude that the defendant must be held to have waived any right to damages on account of the alleged defective tanks. Such waiver is based upon the conduct of the defendant as heretofore detailed. *Monroe W. W. Co. v. Monroe,* 110 Wis. 11, 85 N. W. 685; 29 Am. & Eng. Ency. of Law (2d ed.) 1103.

In a note to 35 A. L. R. 1275, it is said that under circumstances like those obtaining in the instant case, where renewal notes are given, the right to set up an available defense is thereby cut off; that the execution of a renewal note is treated as a waiver of the defense, or as creating an estoppel against the maker. It is also there said that this doctrine is in harmony with the great weight of authority. Whether the renewal of the notes alone, under the circumstances herein appearing, operates as a waiver of the defense, is not here decided. It is, however, expressly held that all of the acts of the defendant as heretofore detailed clearly manifest a waiver of his alleged defense.

*By the Court.*—The judgment of the lower court is modified, and as so modified affirmed, and the cause is remanded with directions to enter judgment in accordance with this opinion.