ADVANCE-RUMELY THRESHER CO., INC. v. STOHL.

No. 4792. Decided December 2, 1929. (283 P. 731.)

*W. E. Davis,* of Brigham and *H. R. Turner,* of Pocatello, Idaho, for appellant.

*Thatcher & Young,* of Ogden, for respondent.

FOLLAND, J.

Plaintiff commenced this action to recover the balance of the purchase price on an Advance-Rumely combination harvester; the price being evidenced by notes secured by a chattel mortgage on the harvester, which mortgage plaintiff sought to foreclose. The case was tried to a jury, and, after a verdict for defendant, plaintiff appeals. Plaintiff is a New York corporation, with head offices at La Porte, Ind. It alleges the contract of purchase is an Indiana contract, made in the course of interstate commerce. Defendant alleges that the contract was made within the state of Utah,

and that plaintiff, being a foreign corporation and not having complied with the laws of the state permitting it to do business within the state, the notes sued upon are void, and that plaintiff has no standing to prosecute its suit in the courts of this state. A further defense alleges breach of warranty with respect to the machinery sold, and that defendant had rescinded the contract; that, notwithstanding he did not give notice of defects in the machinery or of rescission, as required by the contract, plaintiff by its conduct had waived strict compliance on the part of the defendant with the terms of the contract in this respect. An additional defense sets up damages because of a breach of warranty. The case was tried on the question of rescission of contract; the trial court holding that the defendant could not urge both rescission and damages for the breach.

Two questions are presented on this appeal: (1) May the plaintiff maintain its action in view that it is a foreign corporation and has not complied with the laws of this state permitting it to do business herein; and, (2) assuming the harvester company did not comply with the terms of warranty, is defendant precluded from asserting breach of warranty as justification for rescission of the contract?

On the first point defendant made a motion for nonsuit at the close of plaintiff's case on the ground that the transaction in question was intrastate, and that plaintiff, a foreign corporation, not having complied with the laws of Utah, could not maintain the action. This motion was overruled and exception taken. Defendant on this appeal made cross-assignment of error assigning that the court erred in failing and refusing to grant a motion for nonsuit. This motion is as follows:

"Mr. Young (Attorney for Respondent): For the sake of the record I desire at this time to move for a non-suit on the ground that the plaintiff is a foreign corporation—admittedly so—and as such would not be permitted to maintain this suit. The record showing that the sale was made in the State of Utah, the notes and mortgage, together with the other notes and mortgages were executed

in the State of Utah, and the machine in question was not delivered to this state before the notes and mortgage were signed, and the entire transaction took place in this state, and there is no proof that the plaintiff has ever complied with the laws of the State of Utah with respect to foreign corporations doing business in this state. I take it that it is admitted, that fact is admitted.

"Mr. Turner (Attorney for Appellant): No, sir, we are not doing business in this state at all. We have not complied with the laws here.

"The Court: The motion is denied at this time. It may be that some time later on we can hear from you. '

"Mr. Young: We reserve an exception."

In the assignments of error, appellant has sought to enlarge the grounds of this motion by urging that plaintiff was doing business generally in the state. This ground is also argued in his brief.

The motion as made, however, is upon two grounds, it being conceded that plaintiff had made no effort to qualify under the laws of the state so as to permit it to do business in Utah: (1) That the contract is intrastate rather than interstate; (2) that under these circumstances our statute does not permit the plaintiff to maintain an action in the courts of the state.

It is well settled that a motion for non-suit must specifically state the grounds relied upon, and that other grounds stated for the first time in this court will not be considered. *Boyle* v. *Union Pac. R. R. Co.,* 25 Utah 420, 71 P. 988. We are not called upon, therefore, to pass on the question of whether the evidence shows that plaintiff was doing business generally within the state, nor to consider the legal results flowing therefrom if the evidence should so show. It is urged by defendant that the transaction is intrastate for two reasons: (a) That the machinery was shipped into Utah in a knocked-down condition and after its arrival and delivery to defendant the parts were assembled and put in running condition by experts of the plaintiff; (b) that the notes and mortgage were executed and delivered after the machinery had arrived in Utah on

board cars and before delivery of same to the defendant. In support of his views, defendant cites 14A C. J. 1270, and 14A C. J. 1286, and a large number of cases found in the footnotes of these texts.

The evidence of this branch of the case with little, if any, contradiction establishes the following facts: Plaintiff is a corporation organized under the laws of New York, with its head office at La Porte, Ind., and a branch office at Pocatello, Idaho. The territory covered by the branch office at Pocatello includes the states of Idaho and Utah and parts of Wyoming; that the company kept no stock of goods in Utah, had no account in any bank in this state; that the expenses incident to its sales and business in the states named were paid by check issued at its Pocatello office; that a garage and service station operator named Winchester, located at Tremonton, Utah, was designated as a local dealer, dealing in Advance-Rumely machinery; that he had parts for which he was personally responsible to the company which he kept for sale; and that he advertised and solicited orders for this machinery and received commissions on sales made by or through him according to the terms of the written contract between him and the company. This contract, by its terms, indicates that he is in no manner an agent of the company with powers to bind it in any respect. Winchester interested Stohl in this particular harvester, but the sale was made by a Mr. Moyer, a salesman working under the direction of the Pocatello branch office. The contract of sale, which is in writing, is in form of an order signed by the defendant, Stohl, at Tremonton. The order was brought to him by Moyer, and is a printed blank furnished by the company. It contains provisions in respect to manner of settlement, warranty of machinery, conditions upon which the right to rely on the warranty must be performed by the buyer, and further provides that the contract shall not be obligatory upon the vendor until accepted by it at its head office. This order went through the Pocatello branch office to the company at La Porte, Ind., where it

was accepted in writing on July 5, 1927; acceptance being executed by the vice president of the company. The harvester came by freight from La Porte, Ind., via McCammon, Idaho, to Deweyville, Utah. Defendant was notified by the Pocatello office that the harvester was at Deweyville. Defendant thereupon went to the bank at Tremonton and executed a receipt for the machinery and the notes and chattel mortgage in question in this suit. All of these documents were prepared by the Pocatello branch office and sent to the bank. Defendant, in company with Winchester went to Deweyville, obtained possession of the machinery, and took it to Tremonton. The next day two experts of plaintiff came to Tremonton and assembled the machinery and started the motor to see that it would operate.

From this evidence we are convinced the transaction in suit is an interstate one. The order was signed in Utah, sent to the Idaho branch office, and accepted by the company in Indiana. *Cooper Mfg. Co.* v. *Ferguson,* 113 U. S. 727, 5 S. Ct. 739, 28 L. Ed. 1137. We are also satisfied that the work of setting up the machinery by experts of vendor and the adjusting of the same in order to make it work satisfactorily, although performed in this state, did not make the transaction an intrastate one as distinguished from interstate. The question is a federal one, and we are bound by the decisions of the Supreme Court of the United States. Defendant cites and relies on the case of *Browning* v. *City of Waycross,* 233 U. S. 16, 34 S. Ct. 578, 58 L. Ed. 828, but, since the decision in that case, the Supreme Court of the United States has fully settled the matter in the case of *York Mfg. Co.* v. *Colley,* 247 U. S. 21, 38 S. Ct. 430, 62 L. Ed. 963, 11 A. L. R. 611, distinguishing the Browning Case. It was there held, citing the headnote, as follows:

"A provision in a contract of sale of an artificial ice plant by which the foreign corporate seller agreed to furnish an engineer who should assemble and erect the machinery at the point of destination, and should make a practical efficiency test before complete delivery, is relevant and appropriate to the interstate sale of the

machinery, and, therefore, does not justify the courts of the state to which the machinery was shipped in refusing to enforce payment of the purchase price, on the theory that the corporation was doing local business in the state without having first secured the permit made by a state statute a condition precedent to the right to sue in the local courts."

The facts in the instant case bring it fully within the decision of *York Mfg. Co.* v. *Colley,* supra. Other cases in point are *Pfaudler Co.* v. *Westphal,* 190 Wis. 486, 209 N. W. 700; *Kaw Boiler Works Co.* v. *Interstate Refineries, Inc.,* 118 Kan. 693, 236 P. 654.

The mere fact that notes and mortgages were executed in Utah does not take the transaction out of interstate commerce any more than if cash had been paid instead of the notes given. The execution of these documents is an incident to the original sale. *Mergenthaler Linotype Co.* v. *Spokesman Pub. Co.,* 127 Or. 196, 270 P. 519. The transaction involved in this case being an interstate one, the plaintiff is entitled to maintain its action notwithstanding it has never complied with the laws of the state with respect to foreign corporations doing business within the state. *Sioux Remedy Co.* v. *Cope,* 235 U. S. 197, 35 S. Ct. 57, 59 L. Ed. 193.

On the other question presented we may assume there is breach of warranty on the part of vendor that the machinery did not meet the conditions of the warranty. The jury by its verdict has so found, and the evidence is sufficient to support the verdict on this point. We must determine, however, whether the defendant is precluded from asserting breach of warranty as a defense to the action for recovery of the purchase price where he attempts to rescind the contract. The contract provides, among other things, as follows:

"Purchaser shall not be entitled to rely upon any breach of above warranty or to rescind this contract or to any claim or set off against the vendor because of any breach, unless: (a) Notice of the defect or breach, particularly describing the same and specifying the time

of discovery thereof, is given by registered letter addressed to vendor at its head office, posted within four days after such discovery; (b) Such defect or breach appears within ten (10) days after the first use of the goods; (c) the vendor fails to remedy such defect or breach by substitution of parts or otherwise within a reasonable time after receipt of such notice, which substitution it shall have the right to make. Purchaser shall render necessary and friendly assistance to vendor in and about remedying the defect. If the vendor fails to remedy the defect, purchaser shall immediately return the defective goods or parts in as good condition as when received by him, reasonable wear excepted, to the place from which they were received, and shall thereupon give vendor immediate notice of such return by a registered letter, addressed and mailed to vendor at La Porte, Indiana; and also to the branch office in the territory where said goods were sold. Thereupon the money paid and security given by purchaser on account of the purchase price of the machinery or parts returned will be promptly returned by vendor, and vendor shall be released from all further and other claim to return the goods or parts in the manner aforesaid after full compliance with all the foregoing conditions, and to so recover the money paid or security given, shall constitute the sole and exclusive remedy of the purchaser, and under no circumstances shall the vendor be liable for special or other damages of any kind or character suffered by the purchaser whether growing out of the use, inability to use, or attempted use of said goods or parts, or from any cause whatsoever. Failure so to return the goods or to give the aforesaid notices shall operate as an acceptance of said goods and fulfillment of this warranty in all and every particular. When at the request of purchaser, some person is sent to remedy or repair machinery and same is found to have been carelessly or improperly handled, the expense incurred by vendor in putting it in working order, shall be paid by purchaser. No attempt by vendor or its representatives to remedy any defects shall be deemed a waiver of any of the provisions hereof, and if a mechanical expert visits the machine and. does not leave it working properly, purchaser shall give immediate notice in writing or by prepaid telegram to vendor at its head office stating specifically the failure or neglect complained of."

It is undisputed that the defendant at no time sent a letter, registered or otherwise, or any telegram, to the plaintiff company, at its head office at La Porte, Ind., nor did he communicate direct by letter or otherwise with the manager in charge of the branch office at Pocatello. Defendant re-

ceived the machinery July 16, 1927. It was assembled and set up on the 17th, and was used by him in harvesting grain until September 7, 1927, during which period he had harvested 490 acres. He then pulled the harvester to the edge of his own farm and left it. He never returned the machinery "to the place from which they were received." Plaintiff in its motion for directed verdict, made at the close of the defendant's case, urged that it was entitled to a directed verdict for the reason that defendant had failed within four days after starting the machine to notify the company of any defect which he had discovered, and never later informed them as to when he had discovered any defect or what the defect was, and that no such notice was sent by registered mail or otherwise, as provided for in the contract, but the defendant had continued to work the machinery, that he never returned it to the place where he received it, and that he never notified the company at La Porte, Ind., by registered mail or otherwise, that he had returned the property to the place where he received it, nor that he made any offer to the company or any agent capable of accepting it that he was willing to return it, and that there were no changes or modifications of the contract made in writing.

Defendant contends that he is excused from strict performance of the terms of the contract. His answer reads as follows:

"That plaintiff has by its conduct, and the conduct of its officers and agents, waived the provision in said warranty respecting the giving of the written notice by registered mail as therein required, and should now be estopped from claiming or asserting any advantage by reason of the failure of this defendant to comply strictly with said provision."

He excuses failure to return the machinery upon the ground that he offered to return it, but that plaintiff had always refused to accept it.

The facts applicable to this branch of the case are substantially these: The harvester, being unloaded by Stohl at Deweyville, Utah, was pulled over to Tremonton. The next

day two experts, Edwards and Clark, both working under directions of the Pocatello branch office, came and assembled the machinery and started the motor to see that it would operate; they finished at 4 or 5 o'clock Saturday afternoon. These men left, saying they would return Monday. Edwards returned Monday and did some other adjusting Monday or Tuesday. In the meantime, however, on Saturday afternoon and Sunday, after the experts had left, Stohl took the harvester into a 20-acre field nearby and started cutting the grain. Winchester was with him during part of these operations. While thus operating, a rock got into the machinery because the cutter-bar was too low. A concave was broken and teeth thrown out of the cylinder. The machine was operated again on Monday. Edwards, one of the experts, returned, watched the operation of the machine two or three hours and made adjustments. The harvester was taken to other fields which Stohl had contracted to cut. A week or so later Mr. Moyer, the salesman who negotiated the sale, called on Stohl and observed the operations of the harvester. While he was there, a differential gear broke. Moyer phoned the office at Pocatello to send a new part and also send an expert to put it in the machine. The branch manager replied that the experts were busy and could not come. Moyer waited until the next day, received the new part, and placed it in the machine. He reported his findings as to the breakdown to the branch office. Moyer visited Stohl once after that and found the rattle rake broken so it did not work, but did not fix it or report it to the office. About the 8th of August, Stohl moved onto his own farm and started cutting. At this time the other expert, Clark, visited him, watched the operation of the machine, and made some adjustments. Clark testified he was not sent specially to see this harvester, but, passing on the road and seeing the Rumely harvester, called to see how it was working; that it was working all right, but that Stohl was not operating it properly; that he instructed Stohl with respect to its operation and then reported his visit to the branch office,

but did not report that Stohl was having any trouble, because he was not having trouble. Stohl made no complaint to Clark. The work of harvesting continued until September 7th, when Stohl's crop was fully harvested; the harvester was then pulled to the east end of his field and left. The record does not disclose that it was ever moved from that place. He had now finished 490 acres of land of which 265 acres was his own and the balance crops of others which he had contracted to cut. On September 8th Stohl saw Winchester, the local dealer. He testified:

"I told him there was the machine. I was done with it, till something was done about it."

He further testified that the latter part of September a man named Cates, a collector for plaintiff, called upon him and asked for payments on the notes, whereupon "I told him I would not do it till something else was done to that machine." When asked if he had offered to return the machine, he said:

"I tried to return it to them folks. * * * To Mr. Chambers (Perkins) and Mr. Cates. Q. When did you talk with Mr. Perkins? A. Why, I think along in January. * * * Q. What did you tell him? A. I told him that I wasn't going to make any further payments on it till they would do something on it, or rather fix it up so it would run. I told him they would have to do that. They would have to take it. Q. What did he say? A. He said he would not do it. They wanted me to make my payments. * * * Q. When you offered to return it to Mr. Cates what did he say? He told me they would have to go to court if I didn't make my payments. Q. What did you tell him? A. I told him they would have to fix the thing so it would run, or do something, because it was no good to me that way."

None of these people with whom Stohl talked stated to him that he would have to send a registered letter to the company at its home office. Stohl testified that he had read the contract and knew of its requirements in respect to notice. A portion of the letter sent by the attorney of the defendant to the branch manager at Pocatello was received in evidence. It is as follows:

November 8, 1927.
"I now desire to tender back to you the machine for breach of warranty on your part."

Mr. Perkins, the branch manager who had recently been appointed to that position, testified that this offer was made in the office of the attorney for the defendant; that he then took up the matter with his company, but it refused "to receive the machine because Stohl had not complied with the terms of the contract by him to be complied with. * * * That was their sole reason for refusing to accept it." Stohl testified that at various times between July 17th and September 7th parts in the machinery became broken and he would take those parts into Tremonton and have them repaired by a blacksmith; that on each occasion he informed Winchester of the breakdown or trouble he was having. Winchester testified he knew of the trouble Stohl was having, and that he had called the branch office at Pocatello on the phone two or three times; that Stevens, the then branch manager, promised to send experts to take care of the trouble, and that experts came each time he made such request; that experts came twice in response to his request.

We have now referred to or quoted substantially all of the evidence in the record with respect to information received by the company or any of its agents or employees of any failure of the machinery to meet the terms of the warranty or of any offer to return or tender of the machinery. Defendant cites and relies upon the case of *Consolidated W. & M. Co.* v. *Wright,* 56 Utah 382, 190 P. 937, wherein it was held that the vendee was excused from strict performance with respect to giving notice of defects in the machinery where the vendor's agent set up the machinery, started it to work, supervised it during the period of test, and knew of their own knowledge of the failure of the machine to do the work in compliance with the terms of the warranty, and had then ceased using the machine and tendered it back. We

are of the opinion that there is a vital difference in the testimony in the instant case from that in the Wright Case. The contract or warranty here is not identical, although it is similar to the one in the Wright Case. In addition to the requirement of notice to be given within four days after discovery of any defect, which is similar to a like provision in the Wright Case, this contract further provides:

"If a mechanical expert visits the machine and does not leave it working properly, purchaser shall give immediate notice in writing or by prepaid telegram to vendor at its head office, stating specifically the failure or neglect complained of."

The testimony shows several visits of experts and agents of plaintiff during the operation of the machine between July 17th and August 8th, but at no time did defendant make any specific complaint to these agents nor indicate to them that he had any intention of rescinding the contract and returning the machinery. Under the rule of *Consolidated W. & M. Co.* v. *Wright,* supra, we may assume that the company was charged with notice of what these agents learned at the times of these visits and that the notice by registered mail to be given within four days of the discovery of any defect was thereupon waived. The last of those experts or agents visited Stohl on August 8th, and after that Stohl continued to use the machine on his own farm for a full month. The record is silent as to any notification or information reaching the branch office at Pocatello during this period as to any dissatisfaction on Stohl's part. He utterly failed to comply with that provision of the contract last quoted. In the Wright Case the manager of the branch house was present at the trial of the machine, and, seeing its failure to operate, advised Wright that, if the grain was his, he would get a header and cut it. Immediately thereafter Wright procured a header and cut his grain, and did not use the harvester at all. The decision in the Wright Case rests upon the theory that the machine was in Wright's possession for trial only, and that the trial was conducted by him under

supervision of the vendor's agents, and that, after the trial, Wright acted promptly in making his rescission.

The general rule with respect to rescission is stated in Black on Rescission and Cancellation (2d Ed.) ■ § 599, as follows:

"If the purchaser of a tool, implement, machine, apparatus, or any other article intended to serve a useful purpose, discovers that he has been deceived or defrauded, or that the article is defective or unsuited to its purpose, but nevertheless continues to use it, not for the purpose of testing it or trying to make it available (or to an extent substantially greater than is necessary for testing or adjusting) but for the purpose of deriving a benefit or advantage from its use, he will be held to have waived his right to rescind the purchase, and cannot thereafter return the article and claim a restoration of the money paid for it."

We are of the opinion that the defendant came within this general rule that one who seeks to reject an article as not in accordance with the contract must do nothing after he discovers its true condition inconsistent with the vendor's ownership in the property. *Brown* v. *Foster*, ■■ 108, N. Y. 387, 15 N. E. 608. The use of this machinery for six weeks in cutting nearly 500 acres of wheat must have changed the condition of the property. It could not be returned in substantially as good condition as it was when received. That is a condition precedent to rescission unless the changed condition is the result of a breach of warranty. *Summers* v. *Provo Foundry & Machine Co.*, 53 Utah 320, 178 P. 916. The evidence here permits the inference that the defendant exercised dominion over the machinery inconsistent with the ownership of plaintiff and consistent only with title as well as possession in himself. He used the machinery in his own business, for his own profit, not only to harvest his own crop, but also the crops of others. Knowing the defects of which he now complains, he continued to use the harvester until he had done all the work that he expected to do that season. It cannot be said as a matter of law that defendant's conduct does not afford substantial

proof of acceptance, not for the purpose merely of examination and test, but for use and profit.

Stohl notified the local dealer, Winchester, after August 8th, that he was still having trouble, but there is no evidence that this information was conveyed to either the general office or the branch office of the company. Notice to Winchester did not comply with the requirements of the contract, and cannot be held binding on the vendor. This was decided in the case of *Consolidated W. & M. Co.* v. *Barben,* 46 Utah 377, 150 P. 949, 951, wherein the court said:

"It is true that they contend that they notified the local agent, and that he attempted to make the machinery work. It is, however, also true that notice to the local agent alone was not a compliance with the express terms of the warranty, and standing alone, can afford the defendants no protection. This has so often been decided to be the law by the courts under warranties like the one in question that we can add nothing new to the subject, and hence all that can be required of us is to call attention to a few of the many cases upon the subject."

Defendant failed to comply with another important provision of the contract. He utterly failed to return the property to the place where he received it. This is fatal to his right to rescind. He attempts to excuse himself upon the theory that plaintiff had unconditionally refused to take the harvester back and hence was justified in not doing a useless thing. Defendant cannot justify himself on this ground, because the evidence clearly shows that he made no offer to any one who had any authority whatever to receive the property until November 8th, when his attorney, writing to the branch manager, Perkins, at Pocatello, tendered back the machinery. This tender was communicated by the branch manager to the main office, and the company then refused to give him permission to receive the property back, for the reason that defendant had not complied with the terms of the contract. We think it was justified in so doing. Whatever other defense might

be urged by the defendant, it is clear that he is not entitled to a rescission of the contract.

In his answer, the defendant pleaded as a second defense the same facts relied on for rescission, but seeking damages to offset the purchase price. The court refused to permit evidence on this defense or to submit it to the jury, restricting the case to rescission. We are now asked to determine the question whether, in the event of reversal, the defendant may not urge this defense. This we may not do. The question was not presented by any assignment of error, nor is it discussed in the briefs.

The judgment is reversed, and the cause remanded to the district court for a new trial; costs to the appellant.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.